UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEBRA L. GILMORE,
36 McNair Drive
Rochester, New York 14624,
                        Plaintiff

                VS.

UNIVERSITY OF ROCHESTER,
Strong Memorial Division
601 Elmwood Avenue
Rochester, New York 14642, and

MARIE RAMPELLO, R.N.,
Nurse Manager,
Strong Memorial Hospital,
Same Address; and

 ALLEN IBRISIMOVIC,
Senior Human Resources Representative,
Strong Memorial Hospital,
Same Address; and

CHRISTIAN LEE JEFFERSON,
Formerly, Manager of Labor Relations,
Strong Memorial Hospital,
Same Address; and

FAY NORTON,
Manager of Labor Relations,
University of Rochester,
Same Address; and

CHARLES MURPHY
Vice-President for Human Relations,
University of Rochester,
Same Address;
                        Defendants

Civ. No.:

05-cv-6037 (F)

COMPLAINT

Jury Trial Demanded

U.S. DISTRICT COURT
W.D.N.Y. ROCHESTER
05 JAN 28  PM 1:07
FILED

## PRELIMINARY STATEMENT

This is an action for compensatory and punitive damages, liquidated damages, equitable relief, attorney's fees, expert witness fees and other costs, brought by reason of the defendants' wrongful termination of plaintiff's employment with defendants on account of race and disability. The action is brought pursuant to Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq.("ADA"); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. section 794 ("Section 504"); the New York State Human Rights Law, Executive Law sections 296 et seq. ("NYSHRL"); the Family and Medical Leave Act of 1993, 29 U.S.C. sections 2601 et seq. ("FMLA"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. sections 2000d et seq.; Title VII of that Act, as amended, 42 U.S.C. sections 2000e et seq. ("Titles VI and VII"); the Civil Rights Act of 1991, 42 U.S.C. sections 1981 et seq. ("Section 1981"); the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. sections 1988 et seq.("Section 1988") and the state common law of contracts.

## JURISDICTION AND VENUE

This Court has federal question jurisdiction (28 U.S.C. §1331) in respect to the claims made under federal statutes. It has pendent jurisdiction of the state law claims. Venue is proper pursuant to 28 U.S.C. §1391(b) because plaintiff and all defendants reside in this district and all the wrongs complained of occurred in this district.

## PARTIES AND BACKGROUND

1.    Plaintiff is a 47 year-old African-American female and a long-time employee of the defendant university, having worked for 26 years as a patient unit secretary in Strong Memorial Hospital, a division of the university. She was fired on June 13, 2003. The job from which she was fired is the only full-time job she has ever had.

2.    Plaintiff is the mother of two school-age children who live with her. She was their sole source of support when working. After her firing, she has been obliged to rely on other family members and private and public charity for her and their support. When fired, her wages were her only source of income.

3.    Defendant university is a corporation organized under the laws of New York State and employing more than 500 persons in the City of Rochester during times material. Strong Memorial Hospital is a division of the defendant university. Defendant Rampello was the plaintiff's immediate superior at the hospital. Defendant Rampello determined and executed the firing complained of. She is sued as the principal actor. The remaining defendants are all university employees, each of whom had the authority to prevent or reverse defendant Rampello's decision to fire. Instead of preventing or reversing, the remaining defendants participated in the decision, or ratified it, or condoned it. They are sued as aiders and abettors.

4.      At the time of her termination, plaintiff was a member of Local 1199, Upstate Service Employees International Union, AFL-CIO ("union") and a third-party beneficiary of a collective bargaining agreement ("CBA") between the union and the university. The union filed a grievance on her behalf seeking reinstatement and back pay pursuant to the CBA. The grievance is presently in arbitration, and no result has yet been had.

5.      Because the plaintiff is and remains covered by the CBA, because she is presently pursuing an employee's right to arbitration, and because her termination is conditional and not final, she is and remains an "employee" within the meaning of the NYSHRL, Section 504, the ADA, and FMLA. "Termination" as used in this complaint and the CBA means "conditional termination". Whether the condition has been satisfied is for the arbitrator to determine.

6.      The CBA provides that an employee-member can be fired for cause (Article XXVII, section 1). According to the defendant university's termination letter to the plaintiff, dated June 13, 2003, the plaintiff was discharged for consistent tardiness in reporting to work during the previous four months, consistent tardiness in transcribing physician's orders during an unspecified time, and one instance of profanity on June 6, 2003. That termination letter is attached hereto as exhibit A.

7.      The "causes" alleged in the termination letter are in the main *de minimus* and pretextual. By the defendant's own admission, the plaintiff met or exceeded the requirements of her employment. Many of the defendant's attendance complaints are so trivial as to invite the inference that the defendant was building a file for an undisclosed reason. The tardiness complaints are measured in tenths of an hour. When the plaintiff was fired, supposedly for poor attendance, she had accumulated some sick leave and several weeks vacation time. As to her occasional tardiness in transcribing doctor's orders, the termination letter says nothing of competing duties that sometimes made timeliness impossible, or of surrounding circumstances that sometimes made timeliness unnecessary. As to the profanity, the defendant complains of a single instance – an oath uttered in frustration and directed towards no one in particular. This was the defendant's first complaint against the plaintiff in 26 years for using profane language.

8.      The consequences to the plaintiff of losing her job of 26 years were grievous. The consequences to the defendant of the plaintiff's actions and omissions as complained of in the termination letter (exhibit A) were nil. The defendants do not claim that these actions and omissions, wrongful as they may be in the abstract, had the slightest impact upon hospital operations.

9.      That the plaintiff is qualified to perform the essential functions of the position she once held is demonstrated conclusively by her last two annual performance evaluations, attached hereto as exhibits B and C. Her overall rating, both reports, is "meets standards". In some respects she "exceeds standards". The supervisor who signed her last evaluation report on March 28, 2003 (exhibit B) is the same supervisor who fired her less than three months later. In that 2003 evaluation report Defendant Rampello said on pages 3 and 4:

> This is a continued area of strength for Deb. She is positive with co-workers and very kind to patients/families. Deb has a sensitivity for patients and situations that is unmatched by many in her role -- [Deb] is a valuable resource for nursing staff.

10.     In the plaintiff's evaluation report for the previous year (exhibit C), signed 3/27/02, the following appears on the last page;

> Note previous comment re communication. The core areas are a strength for Deb. She is kind and respectful to patients, families, and co-workers. I am constantly impressed with her thoughtfulness and consideration to student volunteers and her acceptance of diverse members of staff.

11.     In "communication/citizenship" defendant determined that the plaintiff "exceeds standards". This is critical, because it was one, just one, failure in this regard that was the precipitating cause of plaintiff's termination.

12.     At the time of her termination the plaintiff was suffering from major depressive disorder and was addicted to crack cocaine. The CBA in its "Memorandum of Understanding, substance abuse" (page 35) recognizes that "substance abuse may be a treatable illness" and imposes upon the defendant an obligation to use best efforts to identify member-employees who suffer from substance abuse and urge them to seek "assistance, treatment and rehabilitation".

13.     The CBA further states in its "Memorandum of Understanding, drug testing of employees who transfer into the hospital division" (page 36, 7) that, respecting such employees who test positive, if they seek rehabilitation, the departments from which they sought transfer will hold their current position for them "until the employee is able to return to work. If the employee refuses rehabilitation, the Hospital may [impose appropriate discipline]." Even as to employees who refuse rehabilitation, termination is not automatic. The CBA specifically excludes a zero tolerance policy.

14.     The Plaintiff has not refused rehabilitation. She has successfully pursued rehabilitation in the absence of reasonable accommodation, and as of this date she has been drug-free since entering the John L. Norris Addiction Treatment Center in Rochester on March 17, 2004. She resided in the Norris Center for 26 days, where she received in-patient care. After successfully completing the Norris program, she underwent out-patient treatment 3 days a week at Conifer Counseling Services in Rochester and successfully completed that program. In addition, she attends meetings of Alcoholics Anonymous or Narcotics Anonymous on a daily basis or almost daily basis, weather permitting. She is a Catholic and a graduate of Our Lady of Mercy High School in Rochester. In her difficulties she has rediscovered and drawn strength from her religious faith. Her efforts at rehabilitation are unremitting and successful.

15.     Article XIV of the CBA is entitled "Sick Leave". Article XIX is entitled "Unpaid Leaves of Absence". Both of these articles contain ameliorating provisions speaking to the plaintiff's circumstances. The defendant did not offer plaintiff the leave benefits of these provisions because, it said, its agents did not know of plaintiff's illness until informed by the

union in late February or early March of 2004, several months after the termination letter. On learning of the plaintiff's illness the defendant refused and still refuses to invoke these Articles or recognize the plaintiff's statutory claims.

16.     The plaintiff did not assert her contractual and statutory rights upon termination because she did not know of them. She did not learn of them until she employed legal counsel in mid-March of 2004. She did not confide in the defendant during her employment because she thought that the defendant might view her disabilities as shameful and view her as an undesirable employee.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

17.     Section 504, the ADA, and the NYSHRL prohibit discrimination in employment by reason of disability. The defendant employer is subject to all three acts. The individual defendants are subject to the NYSHRL only and are sued under that statute for participating in the making of the decisions complained of, or ratifying those decisions, or condoning them.

18.     At the time of her termination in June of 2003 the plaintiff suffered from major depressive disorder and addiction to cocaine. Both conditions are disabilities within the meaning of the acts.

19.     The plaintiff is an "otherwise qualified individual" as her performance evaluations show, (paragraphs 9-11, *supra*). As of this date she is not currently engaged in the illegal use of drugs, nor did the defendant in June of 2003 fire her on the basis of such use.

20.     At the time of her termination the plaintiff's emotional and intellectual resources were severely impaired. These impairments limited her major life activities in several significant ways. She was substantially limited in the life activity of working any job, or class of jobs, or engaging in any activity that placed a premium upon prompt appearance according to scheduled hours. The plaintiff was substantially limited in the life activities of sleeping and eating; money management and parenting; concentration and learning; self-control, stress management, and interacting with others; as well as time management -- focusing on the task at hand and completing it in a timely manner. During the period of her addiction the plaintiff was substantially limited in every major life activity that did not involve obtaining and consuming cocaine, (ADA and Section 504 only).

21.     The plaintiff is a member of the protected class. Her employment was terminated "solely" (Section 504) or "significantly" (ADA and NYSHRL) because of her disabilities. The defendant university has attempted in arbitration to justify her termination on the grounds that she did not advise the defendant of her disabilities prior to termination. .

22.     The plaintiff did not advise because she did not know of her rights to nondiscriminatory treatment and reasonable accommodation prior to termination. Her ignorance in this respect and her consequent failure to advise her employer of her disabilities is chargeable to the defendant, who failed in its legal duty to post the notices that would have informed the plaintiff that, if she advised the defendant of her disabilities while employed, the defendant would help and not harm her. This failure to post is a continuing violation.

5

F



23.    The acts and omissions that the defendant has assigned as reason for firing the plaintiff were a consequence of plaintiff's depression and addiction. The decision to terminate the plaintiff's employment on these grounds violated all three acts.

24.    The plaintiff presently is cured of her depression and is well along towards conquering her drug addiction. She has been drug-free for almost a year. She has successfully completed two professionally operated rehabilitation programs. She regularly attends NA and AA sessions. She has sought and presently seeks to return to work. The defendant's continuing refusal to reinstate her because of her record of disability is a continuing violation of all three acts.

25.    ADA conditions precedent to suit have been satisfied. The plaintiff attaches hereto as exhibit D an EEOC right-to-sue letter. Her EEOC complaint was untimely because the defendant failed to post notices as required under the ADA and because the defendant lacked actual knowledge of her ADA rights until employing an attorney several months after her dismissal.

26.    The defendant has shown malice and reckless indifference to the plaintiff's federally protected rights in the following ways:

- the defendant willfully concealed the existence of such rights by failing to post notices as required by law, and thereafter it relied upon the consequences of such concealment to justify its denial of the plaintiff's federally protected rights;

- this is a continuing violation. Although the plaintiff advised the defendant university in mid-March of 2004 of its ADA duty to post notices, as of this date the defendant has not done so but has persisted in its policy of unlawful concealment;

- upon learning of plaintiff's claim of disability the defendant refused and still refuses to make any effort to confer with plaintiff as contemplated by law to determine the exact nature of plaintiff's disability, the limitations it imposes, whether reasonable accommodation is appropriate, and if so, what form it might take. The defendant refuses to treat with the plaintiff at all except through its attorneys in adversary proceedings.

- the plaintiff is a 26-year employee with a satisfactory work record. On the day she was fired, supposedly for poor attendance, she had accumulated in her personal employment bank several weeks vacation time and some sick time.

- The plaintiff, although neglectful of some duties in minor ways, visited no harm upon the defendant by reason this neglect that the defendant is able to articulate or sees reason to articulate, notwithstanding its

y

contention that it fired the plaintiff for cause By contrast, the defendant by its decision to terminate the plaintiff's employment has caused her massive harm.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

27.　　Sections 1981, 1982, Title VII, and NYSHRL forbid discrimination on the basis of race.

28.　　Section 1981 provides that all persons shall have the same right as white citizens to make and enforce contracts and enjoy the benefits thereof. Section 1982 provides that that all citizens of the United States shall have the same right as white citizens to hold personal property. Title VII (42 sec. 2000-e2 et seq.) provides that an unlawful termination is established when the complaining party demonstrates that race was a motivating factor even though other factors also motivated the termination; and the NYSHRL provides that it is an unlawful discriminatory practice for an employer to discharge an individual from employment because of race.

29.　　The defendant employer is sued under all four statutes. The individual defendants are sued under Sections 1981 and 1982 and the NYSHRL.

30.　　Title VII requires the posting of notices. As we have seen, the defendant does not post notices, or does not post them where they can be found, as a result of which any attempt to exhaust administrative remedies would be futile, because untimely.

31.　　The plaintiff is an African-American citizen of the United States and a third-party beneficiary of the CBA. The CBA allows termination of employment only for cause. The plaintiff's interest in the CBA is a Section 1982 property interest which the defendant violated when it terminated her without cause.

32.　　The defendant's letter of June 13, 2003 confirming plaintiff's termination (exhibit A) followed immediately upon a written complaint by a staff registered nurse that she had asked the plaintiff to call the cashier's office. The plaintiff, as was her custom, complied with the nurse's request, but before complying (it was a brutal day), the plaintiff exclaimed in frustration "I would like to go to mother-fucking lunch sometime". This is in contrast to the plaintiff's habitually courteous demeanor in dealing with others, a demeanor that the defendant acknowledges in its evaluations of the plaintiff's "core competencies", (paragraphs 9-11, *supra*).

33.　　Occasional swearing at work was not uncommon. Doctors swore from time to time, as did nurses, secretaries, and nurses who supervise secretaries. The plaintiff knows of no other occasion wherein an employee of any rank or description was fired or otherwise disciplined for merely uttering an obscenity, as contrasted with verbally assaulting another person in an obscene manner. The plaintiff had never before been reprimanded or otherwise disciplined for swearing.

34.　　"Mother-fucker" is an oath in common use among black Americans. It falls harshly on white ears. The plaintiff was fired four days after her indiscrete use of this unpleasant term not

7

because she swore, which the defendant always overlooked, but because her oath was a black persons' oath.

35.    The reasons given in the termination letter (exhibit A) are not of such weight and breadth as would persuade the defendant or any other reasonable employer to terminate an employee of 26 years service and a satisfactory work record. Racial animus was a factor in the decision to terminate the plaintiff. Racial animus is a factor in the decision not to reinstate the plaintiff. Because it was and is a factor, all four statutes were violated, and the violation is a continuing one.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE DEFENDANT EMPLOYER

36.    The FMLA requires certain employers to grant unpaid leave to qualifying employees.

37.    The defendant is an employer subject to the FMLA. The defendant employed plaintiff for at least 1250 hours of service during the 12 month period preceding her termination. The plaintiff is a member of the protected class.

38.    The FMLA requires an employer to provide a qualifying employee with up to 12 weeks unpaid leave for a "serious health condition" that makes the employee unable to perform the functions of the position. It further requires the employer to restore that employee to the duties and benefits of her employment when she returns after leave.

39.    The plaintiff had a "serious heath condition" within the meaning of the act in that treatment for her drug addiction and depression involved inpatient care in a residential medical care facility and continuing treatment thereafter by a health care provider. The plaintiff was unable to perform the functions of her position while an in-patient at the medical facility.

40.    The FMLA, like the ADA and the NYSHRL, requires the posting of notices informing employees of their rights under the act. The defendant failed to post these notices, and the plaintiff had no actual knowledge of her rights under the act. As a consequence the defendant is precluded in this action from denying coverage under the act.

41.    The defendant unlawfully denied the plaintiff the benefits of the act when it terminated her. It continues unlawfully to deny her the benefits of the act by refusing to reinstate her.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE DEFENDANT EMPLOYER

42.    This is a contract action at common law brought pursuant to Article XXVII of the CBA. Both parties understand this Article to prohibit firing except for good cause shown. The plaintiff is a union member and a third-party beneficiary of the CBA.

43.    The defendant has not stated or shown good cause for firing the plaintiff, a 26-year

employee with a satisfactory work record. The "causes" that the defendant has cited in its termination letter are pretextual and trivial in light of the plaintiff's 26 years of faithful service.

44.     The defendant breached the plaintiff's CBA rights by firing her in the absence of good cause shown cause.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANT EMPLOYER

45.     This is a contract action at common law brought pursuant to the CBA; more specifically, the "Memorandum of Understanding, substance abuse", the "Memorandum of Understanding, drug testing ...", Article XIV "Sick Leave", and Appendix D "Bulletin Board Locations" appearing at pages 35 and 36-7, 17, and 32, respectively, of the CBA.

46.     The first memorandum (page 35) promises best efforts on the part of the hospital to identify employees with substance abuse problems and urge them to seek assistance, treatment and rehabilitation. The second memorandum (pages 36-7) offers assurance to employees that if they come forward and seek assistance for drug addiction they will not fall afoul of a zero tolerance policy in employment. The third provision, Article XIV (page 17), promises that, upon the approval of the employee's supervisor, that the hospital will make available "employee heath assessments" free of charge and offer treatment for health problems at the employee's expense. The fourth provision, Appendix (page 32), implies an undertaking on the part of the defendant hospital to make the other provisions known to all employees.

47.     The hospital breached the CBA in failing to make such provisions known to the plaintiff, with the result that the plaintiff did not seek assistance but instead suffered termination. By imposing termination in lieu of assistance upon the unsuspecting plaintiff, the defendant further breached the CBA.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE DEFENDANT EMPLOYER

48.     This is a common law action in contract brought pursuant to the CBA. The duty of assistance sued upon in the preceding cause of action is a continuing duty not limited to employees in good standing. All employees are eligible for assistance.

49.     The plaintiff is presently an employee pursuing her rights as an employee under the CBA. She is a member of the benefited class.

50.     By refusing to reinstate or otherwise assist the plaintiff under the CBA, the defendant has violated the CBA. This is a continuing violation.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANT EMPLOYER

51.     This is a common law action in contract brought pursuant to the CBA. Article IV of the CBA prohibits discrimination in employment on account of race or disability.

52.     Firing a black employee for uttering a black persons' oath while tolerating swearing by white employees is discrimination on the basis of race.

53.     The acts and omissions complained of in the termination letter (exhibit A) are symptoms of the plaintiff's disability. Firing a disabled employee because of her symptoms of disability is discrimination on the basis of disability within the meaning of the CBA.

54.     By firing the plaintiff for the reasons cited, the defendant employer breached Article IV of the CBA.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST THE DEFENDANT EMPLOYER

55.     This is an action brought under Title VII, the ADA, the FMLA, the NYSHRL, and the CBA. These statutes and the CBA impose upon the defendant hospital a duty to post or otherwise inform the plaintiff of her rights thereunder.

56.     The defendant failed to post or otherwise inform, and as a consequence the plaintiff was terminated from employment. Such termination was both a proximate and a foreseeable result of the defendant's breach of duty, (paragraph 16, *supra*).

57.     The defendant is entitled to immediate reinstatement to her employment, the question of monetary damage, if any, to await decision on the preceding causes of action.

58.     This is a separate and independent cause of action. Absent injunctive relief, the plaintiff will suffer irrepairable emotional injury and irrepairable damage by way of loss of enjoyment of life while the preceeding causes are pending

### Special Damages

59.     The plaintiff applied for unemployment compensation after she was unlawfully fired from her job. The defendant successfully opposed the plaintiff's application on the grounds that the plaintiff was fired for good cause. The plaintiff seeks to recover in this action the value of the unemployment benefits wrongly denied her.

59.     The defendant unlawfully terminated the plaintiff's group health insurance as an incident of firing her. The plaintiff has since incurred and paid out of her own pocket expenses formerly covered by this policy. The plaintiff seeks to recover in this action the value of the health insurance benefits wrongly denied her.

F

60.     The plaintiff's complaint of unlawful termination is presently in arbitration. The plaintiff has employed legal counsel to assist in the arbitration at her own expense and may employ and pay expert witnesses as well. The defendant seeks reimbursement in this action.

**Jury Demand**

61.     The plaintiff seeks trial by jury on all issues

**WHEREFORE**, under the first two causes of action the plaintiff seeks to recover compensatory damages for future pecuniary loss, emotional pain and suffering, mental anguish and loss of enjoyment of life; special damages as set forth above; equitable relief in the form of back pay and reinstatement, or in lieu of reinstatement, front pay; punitive damages for malice and reckless disregard of plaintiff's federal rights; attorneys' fees, including expert witness fees, in the discretion of the Court; prejudgment and post judgment interest and costs. Under the third cause of action the plaintiff seeks back pay and liquidated damages, attorneys' fees and expert witness fees as a matter of right, prejudgment and post judgment interest, together with costs. Under the fourth through seventh causes of action the plaintiff seeks contract damages and costs in accordance with the common law of this State. Under the eighth cause of action the defendant seeks an order that the defendant employer reinstate her to her former position, and costs. Under all causes of action the plaintiff seeks such further and unspecified relief as the Court may deem just, the whole amounting to $500,000.00.

Dated at Rochester, New York this 28th day of January, 2005.

DEBRA GILMORE,
By her attorney,

William S. Roby III
85 Gas Light Lane
Rochester, New York 14610
585-241-3353

JUN 1 9 2003

Joint 2

**To:**      Deb Gilmore
            Patient Unit Secretary, 63600

**From:**    Marie Rampello, RN, BSN
            Nurse Manager, 63600

**Date:**     June 13, 2003

**Re:**        Termination

---

This letter is to confirm our conversation of today, June 13, 2003. Sharon Hale, 1199 Delegate, and Christian Jefferson, Human Resources Representative were in attendance. I specifically discussed the following issues:

- For the timeframe of February 3 to May 30, 2003 you reported to work late on 53 of 71 work days, resulting in a rate of tardiness of 75%. Additionally, you did not end your work shift at 3:30PM on 54 days.

- You have consistently not met the unit standard for physician order transcription of one hour for admission orders and one and one-half hours for routine orders. This was discussed with you on February 11, 2003 and during your annual performance appraisal in March 2003. Your poor performance resulted in a delay of treatment on May 15, 2003 of which I was notified on June 11th. (Incident report # E3D25C).

- On Monday, June 9th, you used profane language in a patient care area. This was reported to me by a staff Registered Nurse and witnessed by other nursing staff.

As a result of continued poor performance and the seriousness of these incidents, your employment was terminated effective immediately.


Copy: SEIU 1199 Upstate
        PERC
        Human Resources
        File
        Nursing Time Management

4555



University of Rochester Medical Center
**Strong Memorial Hospital**
**Nursing Practice**

APR 2 9 2003

## Job Description/Performance Evaluation
## PATIENT UNIT SECRETARY PERFORMANCE EVALUATION

Name: DEBRA Gilmore                    Reviewed From: 1/02

Unit: 636                              To: 12/02

Service: Adult

**JOB SUMMARY:**
The Patient Unit Secretary provides clerical, receptionist and customer relation's services on patient care units while maintaining confidentiality. The Patient Unit Secretary maintains patient records and processes orders legibly and accurately. The Patient Unit Secretary maintains telephone coverage, facilitates unit operations and participates in the discharge and transfer of patients as directed.

**MINIMUM QUALIFICATIONS:**
High School education and one (1) year of clerical experience with demonstrated legible writing and verbal communication skills; or an equivalent combination of education and experience. Knowledge of medial terminology and typing or data entry experience preferred.

---

Please Note: - This section is to be completed **ONLY** if the employee has been hired to this role within the last four (4) months. Check appropriate box:

☐ **Probation completed;  Is able to competently perform patient care following policies and procedures using resources appropriately.**

☐ **Extension of his/her probation required**
    Estimated timeframe for extension - up to 4 weeks:_____
    Re-evaluation to occur on: _____
    Reason for probation extension:_____

☐ **Evaluation extension due to short term sick leave, workman's compensation disability or Leave of Absence.  Expected completion date _____**

---

Goals and time frame for completion:

---

_____ I have reviewed and understand this job description
    Date
Employee Name:
Signature: _____

**Overall Performance Rating:**
_____ Needs Improvement
_____ *Developmental Plan Attached
✓ Meets Standards
_____ Exceeds Standards

Evaluator Signature: _____      Date: 3/28/03

Staff Signature: _____          Date: 3/28/03

Nurse Manager Signature: _____   Date: 3/28/03

**_Improvement:_** Majority of important standards linked to critical responsibilities are not met and/or partially met, and ...unities for learning and improvement are critical in order to achieve success.

**_Meets Standards:_** The individual consistently meets the majority of all standards, and opportunities for learning and improvement support continued success.

3) **_Exceeds Standards:_** The individual consistently meets all standards and goes beyond the level described in some standards on a consistent, (e.g., daily) basis.

**_I/P: In Process_** – Continues to learn and acquire skill as part of orientation and role development

**N/A:** Not Applicable

**Please note;** All available information is utilized to provide objective evidence for performance measurement. Sources utilized are observation, document review, testing, peer review, patient comments, and feedback from other sources.

| CRITERIA | Self | | | Evaluator | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 |
| **I.  CLERICAL/RECEPTIONIST RESPONSIBILITIES** | | | | | | |
| ➢ Assembles patient record upon admission assuring all tabs are in the chart | | ✓ | | | ✓ | |
| ➢ Places patient identification on every page of medial record and requisition via spark card or handwriting throughout hospitalization | | ✓ | | | ✓ | |
| ➢ Demonstrates accuracy in transcription of Physician's orders according to SMH Nursing and Hospital policies | | ✓ | | | | ✓ |
| ➢ Transcribes orders in a timely fashion | | ✓ | | ✓ | | |
| ➢ Notifies Charge Nurse of any questions; (i.e. illegibility of orders) | | ✓ | | | ✓ | |
| ➢ Accurately recopies information on additional records or pages as required (e.g. allergies and MAR's) | | ✓ | | | ✓ | |
| ➢ Faxes diet sheet to food/nutrition in a timely manner | N/A | | | | | ✓ |
| ➢ Schedules tests and procedures as ordered in a timely manner | | ✓ | | | | |
| ➢ Communicates scheduling  of test concerns with Charge Nurse/Nurse Manager | | ✓ | | | | |
| ➢ Prepares records for scheduled tests and procedures according to standards and other patient data | | ✓ | | | | |
| ➢ Files diagnostic laboratory reports in accurate and timely fashion | | ✓ | | | | |
| ➢ Secures patient care equipment and supplies as requested by nurses and physicians | | ✓ | | | | ✓ |
| ➢ Adequately stocks area with  most current forms and supply needs for daily use | | ✓ | | | ✓ | ✓ |
| ➢ Maintains an accurate record of patient location when off unit | | ✓ | | | ✓ | ✓ |
| ➢ Demonstrates effective, courteous telephone manners | | ✓ | | | ✓ | |
| ➢ Relays messages promptly and accurately to appropriate person. | | ✓ | | | ✓ | |
| ➢ Demonstrates accurate use of telephone system, intercom, fax machine, and tube station | | ✓ | | | ✓ | |
| ➢ Participates in the discharge and transfer of patients as directed: | | | | | | |
|    ➢ Real time arrival of patients in CIS and timely discharge of patient from Omega System | | ✓ | | | ✓ | |
|    ➢ Faxes discharge instructions to PCP in a timely manner | | ✓ | | | ✓ | |
|    ➢ Disassembles medical record/charts accurately and in a timely manner | | ✓ | | | ✓ | |
|    ➢ Prepares patient records for transfers | | ✓ | | | ✓ | |
| ➢ Accurately updates patient care forms such as patient census, dietary board | | ✓ | | | ✓ | |

**Clerical/Receptionist**
**Staff Comments:**

When taking off CIS orders I find it difficult looking for bedside booklets & pt. charts. It's also frustrating when people are paged & no one tells you that.

Secretary (cont'd) pg.

## CRITERIA

| COMMUNICATION/CITIZENSHIP | Self Y | Self N | Evaluator Y | Evaluator N |
|---|---|---|---|---|
| ➤ Maintains confidentiality and patient/family privacy * | ✓ | | ✓ | |
| ➤ Adopts changes in hospital policy | ✓ | | | ✓ |
| ➤ Informs charge nurse when leaving unit | ✓ | | | |
| ➤ Takes accountability for own beliefs, attitudes and actions * | ✓ | | ✓ | |
| ➤ Provides secretarial assistance on other units as necessary | ✓ | | ✓ | |

| | Self 1 | Self 2 | Self 3 | Eval 1 | Eval 2 | Eval 3 |
|---|---|---|---|---|---|---|
| ➤ Maintains positive relationship with all members of the healthcare team [1] | | ✓ | | | ✓ | |
| ➤ Is approachable and works constructively to promote smooth and efficient operations and follows through on all task (i.e. supplies ordered/equipment ordered) [1] | | ✓ | | | ✓ | |
| ➤ Utilizes conflict resolution with co-workers in a timely and positive manner [1] | | ✓ | | | ✓ | |
| ➤ Communicates effectively in written, verbal and non-verbal interaction with healthcare members, patients and families [1] | | ✓ | | | ✓ | |
| ➤ Treats patient/family and staff with respect, kindness and courtesy without discrimination [1,2] | | | ✓ | | | ✓ |
| ➤ Acknowledges successful actions of others being positive, optimistic and enthusiastic about peers and SMH [1] | | ✓ | | | ✓ | |
| ➤ Provides the best possible service for both internal and external customers utilizing Service Excellence Behaviors [2] | | | ✓ | | | ✓ |
| ➤ Expresses personal and work related stress and dissatisfaction in a manner that does not compromise professional responsibilities or impinge on others [1] | | ✓ | | | ✓ | |
| ➤ Actively participates in group activity (e.g., unit based teams, community organizations, performance improvement) [4] | | ✓ | | | | |

**Communication/Citizenship**
**Staff Comments:**

**Evaluator Comments:**

This is a continued area of strength for Deb. She is positive with co-workers & very kind to patients/families. Deb has a sensitivity for patients & situations that is unmatched by many in her role.

Needs Improvement _____
Meets Standards ✓
Exceeds Standards _____

*University of Rochester Medical Center Core Competencies
1   Interaction with Others/Communication: Flexible and willing to listen to ideas that are different from their own in order to promote understanding. Use effective listening, verbal, and written skills to provide necessary information clearly and in a timely fashion.
2   Customer Service: Focuses on understanding, meeting, and exceeding customer expectations.
3   Expertise/Continuous Learning: Demonstrates knowledge and skills related to the functional area and exhibits commitment to developing personal abilities.
4   Resourcefulness/Results: Uses available resources to assist in day-to-day operations and to produce quality products/services.
5   Personal Accountability: Takes responsibility for own work in completing tasks.

Revised: 9/2001

...ecretary...(con't) pa...

...ceptionist

**...tor Comments:** Transcription of orders within \_\_\_ours of admission to unit is not consistently accomplished as evidenced by reports from nursing staff. AM orders are often not transcribed in timely way as well. Deb is thorough in follow-up of scheduling procedures (\_\_\_\_) and is a valuable resource to nursing staff. I would also like Deb to be more aware of noise level on units and not contribute to that by calling across unit or down hallways to nurses or staff from other departments.

Needs Improvement _____
Meets Standards \_\_✓\_\_
Exceeds Standards _____

| II. PERSONAL COMMITMENT/ACCOUNTABILITY | Self | | | Evaluator | | |
|---|---|---|---|---|---|---|
| | Y | N | | Y | N | |
| ➤ Adheres to the dresscode | ✓ | | | ✓ | | |
| ➤ Attendance is at or above acceptable level | | ✓ | | | ✓ | |
| ➤ Punctuality is at or above acceptable level | ✓ | | | | ✓ | |
| ➤ Annual Mandatory/inservices complete (University) | ✓ | | | ✓ | | |
| ➤ Completed individual educational record | ✓ | | | ✓ | | |
| ➤ Demonstrates flexibility in scheduling to meet patient and unit needs | ✓ | | | | ✓ | |
| ➤ Maintains a clean and orderly environment | ✓ | | | ✓ | | |
| ➤ Completes self evaluation and uses it as basis for development | ✓ | | | ✓ | | |
| ➤ Practices hospital/department specific policies | ✓ | | | ✓ | | |

| PERSONAL ROLE DEVELOPMENT | 1 | 2 | 3 | 1 | 2 | 3 |
|---|---|---|---|---|---|---|
| ➤ Demonstrates responsibility for learning to improve self and performance, including progress toward achievement of annual goals [3] | | ✓ | | ✓ (punctuality) | | |
| ➤ Identifies practice problems and communicates to unit leadership | | ✓ | | | ✓ | |
| ➤ Accepts and acts on constructive feedback in a positive manner | | ✓ | | | ✓ | |
| ➤ Assists in unit based orientation of Patient Unit secretaries as needed | | ✓ | | | ✓ | |
| ➤ Attends unit/service meetings | | | | | | |

**Personal Commitment/Accountability**
**Staff Comments:**

**Evaluator Comments:** Punctuality continues to be a concern, although this has improved somewhat over the last month.

Needs Improvement \_\_✓\_\_
Meets Standards \_\_✓\_\_
Exceeds Standards _____

*1-5 See key on last page

Strong Memorial ...
Nursing Practice
Job Description/Performance Evaluation
## PATIENT UNIT SECRETARY PERFORMANCE EVALUATION

Name: DEBRA GILMORE

Unit: 636

Service: Surgery

Reviewed From: 1/01

To: 12/01

## JOB SUMMARY:
The Patient Unit Secretary provides clerical, receptionist and customer relation's services on patient care units while maintaining confidentiality. The Patient Unit Secretary maintains patient records and processes orders legibly and accurately. The Patient Unit Secretary maintains telephone coverage, facilitates unit operations and participates in the discharge and transfer of patients as directed.

## MINIMUM QUALIFICATIONS:
High School education and one (1) year of clerical experience with demonstrated legible writing and verbal communication skills; or an equivalent combination of education and experience. Knowledge of medial terminology and typing or data entry experience preferred.

Please Note: - This section is to be completed **ONLY** if the employee has been hired to this role within the last four (4) months. Check appropriate box:

☐ Probation completed;  Is able to competently perform patient care following policies and procedures using resources appropriately.

☐ Extension of his/her probation required
   Estimated timeframe for extension - up to 4 weeks:_____
   Re-evaluation to occur on: _____
   Reason for probation extension:_____

☐ Evaluation extension due to short term sick leave, workman's compensation disability or Leave of Absence.  Expected completion date _____

Goals and time frame for completion:

X I have reviewed and understand this job description
3/27 Date
Employee Name:
Signature _Debra Gilmore_

Overall Performance Rating:
___ Needs Improvement
   *Developmental Plan Attached
X Meets Standards
___ Exceeds Standards

Evaluator Signature: _Diana Raspello_    Date: 3/27/02

Staff Signature: _Debra Gilmore_    Date: 3/27/02

Nurse Manager Signature: _Diana Raspello_    Date: _____

**Rating Definitions**

*Improvement:* Majority of important standards linked to critical responsibilities are not met and/or partially met, and Improvement: Majority of important standards are critical in order to achieve success.

...nities for learning and improvement

*...ts Standards:* The individual consistently meets the majority of all standards, and opportunities for learning and improvement ...pport continued success.

*Exceeds Standards:* The individual consistently meets all standards and goes beyond the level described in some standards on a consistent, (e.g., daily) basis.

*I/P: In Process* – Continues to learn and acquire skill as part of orientation and role development

*N/A:* Not Applicable

*Please note;* All available information is utilized to provide objective evidence for performance measurement.  Sources utilized are observation, document review, testing, peer review, patient comments, and feedback from other sources.

| CRITERIA | Self | | | Evaluator | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 |
| **I.   CLERICAL/RECEPTIONIST RESPONSIBILITIES** | | | | | | ✓ |
| ➤ Assembles patient record upon admission assuring all tabs are in the chart | | | ✓ | | ✓ | |
| ➤ Places patient identification on every page of medial record and requisition via spark card or handwriting throughout hospitalization | | | ✓ | | | ✓ |
| ➤ Demonstrates accuracy in transcription of Physician's orders according to SMH Nursing and Hospital policies | | | ✓ | | ✓ | |
| ➤ Transcribes orders in a timely fashion | | | ✓ | | | |
| ➤ Notifies Charge Nurse of any questions; (i.e. illegibility of orders) | | | ✓ | | | ✓ |
| ➤ Accurately recopies information on additional records or pages as required (e.g. allergies and MAR's) | | ✓ | | ✓ | | |
| ➤ Faxes diet sheet to food/nutrition in a timely manner | | | ✓ | | | ✓ |
| ➤ Schedules tests and procedures as ordered in a timely manner | | | ✓ | | | ✓ |
| ➤ Communicates scheduling of test concerns with Charge Nurse/Nurse Manager | | | ✓ | | | ✓ |
| ➤ Prepares records for scheduled tests and procedures according to standards and other patient data | | | ✓ | | ✓ | |
| ➤ Files diagnostic laboratory reports in accurate and timely fashion | | | ✓ | | | ✓ |
| ➤ Secures patient care equipment and supplies as requested by nurses and physicians | | | ✓ | | | ✓ |
| ➤ Adequately stocks area with  most current forms and supply needs for daily use | | | ✓ | | | ✓ |
| ➤ Maintains an accurate record of patient location when off unit | | | ✓ | | | ✓ |
| ➤ Demonstrates effective, courteous telephone manners | | | ✓ | | ✓ | |
| ➤ Relays messages promptly and accurately to appropriate person. | | | ✓ | | | |
| ➤ Demonstrates accurate use of telephone system, intercom, fax machine, and tube station | | | ✓ | | ✓ | |
| ➤ Participates in the discharge and transfer of patients as directed: | | | | | | |
|    ➤ Real time arrival of patients in CIS and timely discharge of patient from Omega System | | | ✓ | | ✓ | |
|    ➤ Faxes discharge instructions to PCP in a timely manner | | | ✓ | | ✓ | |
|    ➤ Disassembles medical record/charts accurately and in a timely manner | | | ✓ | | | ✓ |
|    ➤ Prepares patient records for transfers | | | ✓ | | | ✓ |
| ➤ Accurately updates patient care forms such as patient census, dietary board | | | | | | |

Clerical/Receptionist
**Staff Comments:**

...ceptionist
...or Comments:

*Average of 65-75% of diet orders faxed in time. Needs to be at > 98%. Deb has improved her organizational skills considerably. Would like to see improvement in communication (ie = professional demeanor on phone, not calling out names of nurses loudly at nurses' station)*

Needs Improvement _____
Meets Standards ___X___
Exceeds Standards _____

| CRITERIA | | | | | | |
|---|---|---|---|---|---|---|
| | Self | | | Evaluator | | |
| **II.   PERSONAL COMMITMENT/ACCOUNTABILITY** | Y | N | | Y | N | |
| ➤  Adheres to the dresscode | ✓ | | | ✓ | | |
| ➤  Attendance is at or above acceptable level | | ✓ | | | ✓ | |
| ➤  Punctuality is at or above acceptable level | ✓ | | | ✓ | | |
| ➤  Annual Mandatory/inservices complete (University) | ✓ | | | ✓ | | |
| ➤  Completed individual educational record | ✓ | | | ✓ | | |
| ➤  Demonstrates flexibility in scheduling to meet patient and unit needs | ✓ | | | ✓ | | |
| ➤  Maintains a clean and orderly environment | ✓ | | | ✓ | | |
| ➤  Completes self evaluation and uses it as basis for development | ✓ | | | ✓ | | |
| ➤  Practices hospital/department specific policies | 1 | 2 | 3 | 1 | 2 | 3 |
| **PERSONAL ROLE DEVELOPMENT** | | | | | | |
| ➤  Demonstrates responsibility for learning to improve self and performance, including progress toward achievement of annual goals | | | ✓ | | ✓ | |
| ➤  Identifies practice problems and communicates to unit leadership | | | ✓ | | ✓ | |
| ➤  Accepts and acts on constructive feedback in a positive manner | | | ✓ | | ✓ | |
| ➤  Assists in unit based orientation of Patient Unit secretaries as needed | | | ✓ | | | ✓ |
| ➤  Attends unit/service meetings | | | | | | |

Personal Commitment/Accountability
**Staff Comments:**



**Evaluator Comments:**

*Deb accepts constructive feedback after some initial defensiveness! She has made an effort to improve on deficiencies. Punctuality is still a problem and needs sustained improvement.*

Needs Improvement _____
Meets Standards ___X___
Exceeds Standards _____

*1-5 See key on last page

Secretary...(cont'd)

| CRITERIA | Self | | | Evaluator | | |
|---|---|---|---|---|---|---|

**COMMUNICATION/CITIZENSHIP**

| | Self | | Evaluator | |
|---|---|---|---|---|
| | Y | N | Y | N |
| Maintains confidentiality and patient/family privacy [5] | ✓ | | ✓ | |
| Adopts changes in hospital policy | ✓ | | | ✓ |
| Informs charge nurse when leaving unit | ✓ | | ✓ | |
| Takes accountability for own beliefs, attitudes and actions [5] | ✓ | | ✓ | |

| | Self | | | Evaluator | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 |
| Provides secretarial assistance on other units as necessary | | | ✓ | | | ✓ |
| Maintains positive relationship with all members of the healthcare team | | | ✓ | | | |
| Is approachable and works constructively to promote smooth and efficient operations and follows through on all task (i.e. supplies ordered/equipment ordered) [1] | | | ✓ | | | ✓ |
| Utilizes conflict resolution with co-workers in a timely and positive manner [1] | | | ✓ | | ✓ | |
| Communicates effectively in written, verbal and non-verbal interaction with healthcare members, patients and families [4] | | | ✓ | | | ✓ |
| Treats patient/family and staff with respect, kindness and courtesy without discrimination [1,2] | | | ✓ | | | ✓ |
| Acknowledges successful actions of others being positive, optimistic and enthusiastic about peers and SMH [1] | | | ✓ | | | ✓ |
| Provides the best possible service for both internal and external customers utilizing Service Excellence Behaviors [2] | | | ✓ | | | ✓ |
| Expresses personal and work related stress and dissatisfaction in a manner that does not compromise professional responsibilities or impinge on others [1] | | | ✓ | | ✓ | |
| Actively participates in group activity (e.g., unit based teams, community organizations, performance improvement) [4] | | | ✓ | | | |

**Communication/Citizenship**
**Staff Comments:**

**Evaluator Comments:**

Note previous comment re communication. The above areas are a strength for Deb. She is kind and respectful to pts, families & co-workers. I am constantly impressed with her thoughtfulness and consideration to student volunteers and in acceptance of diverse members of staff.

Needs Improvement _____
Meets Standards _____
Exceeds Standards ___X___

*University of Rochester Medical Center Core Competencies
1  Interaction with Others/Communication: Flexible and willing to listen to ideas that are different from their own in order to promote understanding. Use effective listening, verbal, and written skills to provide necessary information clearly and in a timely fashion.
2  Customer Service: Focuses on understanding, meeting, and exceeding customer expectations.
3  Expertise/Continuous Learning: Demonstrates knowledge and skills related to the functional area and exhibits commitment to developing personal abilities.
4  Resourcefulness/Results: Uses available resources to assist in day-to-day operations and to produce quality products/services.
5  Personal Accountability: Takes responsibility for own work in completing tasks.

Revised: 9/2001



## DISMISSAL AND NOTICE OF RIGHTS

To: Debra Gilmore
    36 Mcnair Drive
    Rochester, NY 14624

From: **Buffalo Local Office**
      **6 Fountain Plaza**
      **Suite 350**
      **Buffalo, NY 14202**

☐ On behalf of person(s) aggrieved whose identity is
   CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 165-2004-01610 | **Jennifer Carlo,** **Investigator** | **(716) 551-4441** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Elizabeth T. Cadle_

**Elizabeth T. Cadle,**
**Director**

NOV 01 2004

(Date Mailed)

Enclosure(s)

cc: **STRONG MEMORIAL HOSPITAL**
    **601 Elmwood Avenue**
    **Rochester, NY 14642**

    **Dawn Phillips**
    **University of Rochester**
    **1325 Mt. Hope Ave., Suite 202**
    **Rochester, NY 14620**

    **William S. Roby, III**
    **85 Gas Light Lane**
    **Rochester, NY 14610**