UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA L. GILMORE,

                        Plaintiff,

                                              <u>DECISION AND ORDER</u>

                                              05-CV-6037L

                  v.

UNIVERSITY OF ROCHESTER
STRONG MEMORIAL HOSPITAL DIVISION,
MARIE RAMPELLO, R.N.,
ALLEN IBRISIMOVIC,
CHRISTIAN LEE JEFFERSON,
CHARLES MURPHY,
FAY NORTON,

                            Defendants.

_____

      Plaintiff, Debra Gilmore, commenced this action against her former employer, the University

of Rochester, Strong Memorial Hospital Division ("the University"), and several individual

defendants, alleging that she was unlawfully terminated on the basis of her race and disability.

Plaintiff also alleges that the University unlawfully denied her unpaid leave so that she could seek

certain medical care.  Plaintiff asserts claims under the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a),

the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, Titles VI and VII

of the Civil Rights Act of 1964 ("Title VI" and "Title VII"), 42 U.S.C. §§ 2000d, 2000e *et seq.*, 42

U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("§ 1981"), and the New York State Human Rights Law ("HRL"), N.Y. Exec. L. § 296.

Plaintiff has moved to strike several of defendants' affirmative defenses pursuant to Fed.R.Civ.P. 12(f).  Defendants have cross-moved to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).[1]  For the reasons that follow, plaintiff's motion is denied, defendant's cross-motion is granted in part, and the complaint is dismissed in part.

### FACTS

The complaint alleges the following facts.  Plaintiff is a 47-year-old black female.  She held the position of patient-unit secretary at Strong Memorial Hospital ("Strong"), a division of the University, for twenty-six years, until her termination on June 13, 2003.  Plaintiff was informed of her termination on that date in a meeting with Nurse Manager Marie Rampello, union delegate Sharon Hale, and then-human resources representative Christian Jefferson.  In a letter to plaintiff from Rampello confirming the substance of their conversation that day, Rampello recited several problems with plaintiff's performance.  These included:  a 75% tardiness rate from February 3 to May 30, 2003; a consistent failure to meet the "unit standard for physician order transcription of one

---

[1]All further references to the "complaint" are to the amended complaint (Dkt. #14).

hour for admission orders and one and one-half hours for routine orders"; and the use of profane language in a patient care area on June 9, 2003.  Complaint Ex. A.[2]

Plaintiff now concedes that she had a serious drug addiction problem.  About nine months after her termination, plaintiff entered the John L. Norris Addiction Treatment Center in Rochester on March 17, 2004 for drug rehabilitation.  After completing a twenty-six-day inpatient program, plaintiff began receiving outpatient treatment three days a week at Conifer Counseling Services in Rochester.  She alleges that she is no longer using drugs.  Complaint ¶ 14.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), but the EEOC dismissed plaintiff's administrative complaint on November 1, 2004 as untimely.  Plaintiff does not now dispute that it was untimely.

In addition, prior to commencing this action, plaintiff's union filed a grievance on her behalf pursuant to the terms of the collective bargaining agreement ("CBA") between her union and the University, seeking plaintiff's reinstatement and back pay.  As of the date that this action was commenced, the grievance was in arbitration, as provided for by the CBA.  *See* Declaration of Allen Ibrisimovic (Dkt. #12-3) Ex. A, Art. XXX.[3]

Plaintiff filed the complaint in this action on January 28, 2005.  In addition to the University, plaintiff has sued five individual defendants:  Rampello; Jefferson; Allen Ibrisimovic, the Senior Human Resources Representative at the University's Medical Center; Fay Norton, the University's

---

[2]On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are incorporated into the complaint by reference, attached to it as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002).

[3]The provisions of the CBA are cited and relied upon in the complaint and hence may also be referred to in deciding the motion to dismiss.  *Chambers*, 282 F.3d at 152-54.

Manager of Labor Relations; and Charles Murphy, the University's Vice President for Human Relations.

Plaintiff asserts three causes of action. The first, which is brought against all defendants, alleges that plaintiff's addiction to cocaine at the time of her termination constituted a "disability" for purposes of the ADA, the Rehabilitation Act, and the HRL, and that defendants terminated her on account of that disability, in violation of those statutes. The second cause of action, also brought against all defendants, alleges that defendants terminated plaintiff on account of her race, in violation of § 1981, Title VII, and the HRL.[4] The third cause of action, which is brought only against the University, alleges that the University violated the FMLA by not allowing her to take unpaid leave to seek inpatient treatment for her addiction, and by failing to post adequate notices advising University employees of their rights under the FMLA.

**DISCUSSION**

**I. Motions to Dismiss–General Principles**

On a motion to dismiss for failure to state a claim upon which relief may be granted, the court must determine whether evidence presented by the plaintiff that is consistent with the allegations of the complaint would entitle her to judgment in her favor. Fed.R.Civ.P. 12(b)(6). In ruling on such a motion, the Court must read the plaintiff's complaint generously, "drawing all reasonable

---

[4]Although the Complaint's "Preliminary Statement" states that the action is also brought pursuant to Title VI (which prohibits race discrimination in "any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d), the second cause of action does not cite Title VI, nor is Title VI referenced anywhere else in the complaint.

inferences from the complaint's allegations," *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515 (1972), and accepting "the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991).

Consistent with those principles, the Court of Appeals for the Second Circuit has stated that a "complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). A court's task in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).

## II.  Defendant's Motion to Dismiss for Failure to State a Claim

### A. Plaintiff's Race Discrimination Claims

In her second cause of action, plaintiff asserts claims under Title VII, § 1981, and the HRL, alleging that she was terminated from her employment on account of her race. These claims must be dismissed.

First, the Title VII claim is subject to dismissal for plaintiff's failure to exhaust her administrative remedies. A plaintiff may only bring suit in federal court under Title VII if she has first exhausted her administrative remedies and obtained a right-to-sue letter from the EEOC. "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII

... statutory scheme and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).

To be timely, a Title VII complaint must be filed with the EEOC within 300 days of the alleged discriminatory incident. 42 U.S.C. § 2000e-5(e). In general, the filing of an untimely charge will not suffice for purposes of the exhaustion requirement. *See, e.g.*, *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002), *cert. denied*, 539 U.S. 941 (2003); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.), *cert. denied*, 474 U.S. 851 (1985); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("a litigant has up to ... 300 days after the unlawful practice to file a charge with the EEOC") (emphasis omitted).

If, however, a claimant was "actively misled by his employer or prevented in some extraordinary way from exercising his rights," the court may toll the running of the filing period to make timely what would otherwise have been an untimely complaint. *Miller*, 755 F.2d at 24; *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir. 1978). The plaintiff has the burden to prove that equitable tolling should apply. *Miller*, 755 F.2d at 24; *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993), *cert. denied*, 513 U.S. 814 (1994); *Pinney Dock & Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1465 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988); *Simmons v. Terrace Healthcare Center, Inc.*, No. 01 CV 3531, 2004 WL 555708, at *4 (S.D.N.Y. Mar. 19, 2004).

Here, the event giving rise to plaintiff's claim–her termination–occurred on June 13, 2003, giving her until April 8, 2004 to file a charge with the EEOC. Although it is not clear when plaintiff filed her EEOC complaint, plaintiff does not deny that it was untimely. She attributes that fact to

the University's failure to post adequate notices advising employees of their rights and obligations under Title VII.

The complaint, however, states that plaintiff "did not learn of [her rights under the relevant statutes] until she employed legal counsel in mid-March of 2004." Complaint ¶ 16. It appears, then, that plaintiff had roughly three weeks after retaining counsel to file a charge with the EEOC, and she offers no explanation why she did not do so or could not have done so. I therefore find no basis to apply equitable tolling here. "Courts in this Circuit and elsewhere recognize that, once a plaintiff retains counsel, tolling generally ceases because plaintiff has 'gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." *Pollock v. Chertoff*, 361 F.Supp.2d 126, 131 (W.D.N.Y. 2005) (quoting *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.), *cert. denied*, 484 U.S. 986 (1987)); *see also Lynk v. Henderson*, 98 Civ.2086, 2000 WL 178859, *7 (S.D.N.Y. Feb. 15, 2000) ("A lack of diligence on the part of plaintiff's attorney does not justify equitable tolling"); *Economou v. Caldera*, No. 99 Civ. 12117, 2000 WL 1844773, *19-20 (S.D.N.Y. Dec. 18, 2000) ("Equitable relief is particularly inappropriate where the plaintiff was represented by counsel during the relevant period"), *aff'd*, 286 F.3d 144 (2d Cir.), *cert. denied*, 537 U.S. 975 (2002); *accord Mercado-Garcia v. Ponce Fed. Bank*, 979 F.2d 890, 896 (1st Cir. 1992); *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 353 n. 8 (7th Cir. 1992); *Beshears v. Asbill*, 930 F.2d 1348, 1351 (8th Cir. 1991).[5]

_____

[5]In arguing that equitable tolling should apply, plaintiff asserts that "[i]t is the logic of [defendants'] argument] that a plaintiff who discovers his cause of action on the 299th day has one day to file, and a plaintiff who discovers his cause of action on the 301st day has 300 days to file." Plaintiff's Mem. of Law (Dkt. #15) at 3. While I do not understand plaintiff's statement concerning a plaintiff who discovers his cause of action on the 301st day having 300 days to file, I note that plaintiff, by her own allegations, retained an attorney not on the 299th day, but weeks

(continued...)

Aside from that problem, plaintiff has not pleaded sufficient facts to support a claim of race discrimination under Title VII or § 1981.  To make out a *prima facie* case under either statute, plaintiff must allege that she:  (1) is a member of a protected class; (2) was performing her duties satisfactorily; and (3) was discharged under circumstances giving rise to an inference of discrimination on the basis of her race.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *McLee v. Chrysler Corporation*, 109 F.3d 130, 135 (2d Cir. 1997).  The same analysis applies to claims under the HRL.  *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) (stating that court analyzes HRL claims employing the same analytic framework that it employs in Title VII cases).

Here, it is questionable whether plaintiff was performing her duties satisfactorily, since she does not appear to dispute that she was frequently late for work in the months leading up to her termination, or that she used profane language in a patient care area.  In fact, it is her use of profane language that she claims demonstrates discriminatory animus on the part of the University.

Specifically, plaintiff alleges that on or shortly before June 13, 2003, a nurse asked plaintiff to call the cashier's office.  Plaintiff complied, but also complained aloud that she "would like to go to mother-fucking lunch sometime."  Complaint ¶ 32.

Plaintiff alleges that the term "mother-fucker," and variations thereof, is "an oath in common use among black Americans" that "falls harshly on white ears."  Complaint ¶ 34.  She alleges that other employees swore from time to time, but were not fired or disciplined for doing so.  Complaint ¶ 33.

_____

[5](...continued)
before the 300-day period expired.  That was more than enough time to have filed a charge with the EEOC.

Even assuming the truth of these racial stereotypes concerning the use and public acceptability of a particular expletive, I cannot find that plaintiff has stated a viable claim. Misconduct does not become legally protected merely because members of one race are more likely to engage in it than others. An employer has a legitimate right to lay down rules of behavior in the workplace, and to enforce those rules. In effect, plaintiff is suggesting that the University should have overlooked her use of profanity because she *is* black, and is therefore more apt to use certain swear words than white persons. I decline to so rule.

In addition, plaintiff's broad allegation that other employees at Strong swore occasionally without being disciplined, without more, is not suggestive of discrimination. She does not allege that those other employees used this particular profanity, that they swore around patients, or that none of those other employees were black. In short, she has not stated a valid claim. *See Shoate v. City of Beloit Police Dep't*, No. 03-C-0174, 2004 WL 502019, at *4 (W.D.Wis. Mar. 9, 2004) ("Plaintiff asserts that non-African-American officers have been charged with using profanity or with similar offenses and have not been brought up on charges before the Police and Fire Commission. Without any indication of who these officers were, what previous offenses they might have committed or the nature of the offenses, the assertion does not suggest discriminatory treatment").

**B. Plaintiff's Claims Under the ADA, Rehabilitation Act and HRL**

**1. Failure to Exhaust Administrative Remedies**

The University asserts that plaintiff's ADA claim should be dismissed for failure to exhaust administrative remedies. I agree. ADA claims are subject to the same exhaustion requirements as Title VII claims. *See Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004) (per curiam), *cert.*

*denied*, 125 S.Ct. 2944 (2005); *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir. 1996), *cert.*

*denied*, 520 U.S. 1115 (1997).  Plaintiff's ADA claim is therefore dismissed for the same reasons

as her Title VII claim.


**2. Exception for "Current" Users of Illegal Drugs**

As a practical matter, dismissal of plaintiff's ADA claim makes little difference because

claims under the Rehabilitation Act are analyzed under the same standards, and failure to exhaust

is not an issue.[6]  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (noting that

"unless one of th[e] subtle distinctions [between the two acts] is pertinent to a particular case, we

treat claims under the two statutes identically"); Rodriguez v. City of New York, 197 F.3d 611, 618

---

[6]The Rehabilitation Act contains no explicit exhaustion requirement. *Wood v. Pittsford Central School Dist.*, No. 03-CV-6541T, 2005 WL 43773, at *6 (W.D.N.Y. Jan. 10, 2005).  The Second Circuit in *Polera v. Board of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 (2nd Cir. 2002), did hold that where a plaintiff brought an action pursuant to both the Individuals with Disabilities in Education Act ("IDEA") and the Rehabilitation Act, the plaintiff was required to exhaust her administrative remedies under the IDEA prior to bringing a claim under the IDEA or the Rehabilitation Act.  That result, however, appears to have been based on the IDEA's provision that plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are brought under a statute other than the IDEA.  *See id.* at 488 (stating that "[t]he fact that Polera seeks damages [under the Rehabilitation Act], in addition to relief that is available under the IDEA [which does not provide for damages], does not enable her to sidestep the exhaustion requirements of the IDEA").  Although the Second Circuit does not appear to have yet decided whether a Rehabilitation Act plaintiff must otherwise exhaust her administrative remedies before filing suit, a number of other circuits have answered that question in the negative.  *See Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000) (collecting cases).  At any rate, the University does not argue that plaintiff's Rehabilitation Act claim should be dismissed for failure to exhaust.  *See also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (failure to exhaust administrative remedies is not a jurisdictional defect in a Title VII claim).

(2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem").[7]

To prevail on a claim under the Rehabilitation Act, a plaintiff must prove that: (1) she is an individual with a disability; (2) she was "otherwise qualified" for a position; (3) she was denied that position on the basis of her disability; and (4) the employer receives federal funds. *D'Amico v. City of New York,* 132 F.3d 145, 150 (2d Cir.), *cert. denied,* 524 U.S. 911 (1998). "An individual is otherwise qualified for a position is he is able to perform the essential functions of the position, with or without a reasonable accommodation." *Id.* at 151. The standards under the HRL are essentially the same. *See Hendler v. Intelecom USA, Inc.*, 963 F.Supp. 200, 210 (E.D.N.Y. 1997) ("The legislative history of the [HRL] indicates that it was intended to cover the same types of disabilities as protected under the ADA and the Rehabilitation Act"), *quoted in Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 155 (2d Cir. 1998).

The statute also provides that "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use." 29 U.S.C. § 705(20)(C)(i). It also provides, however, that this exclusion for current drug users does not extend to an individual who "has successfully completed a supervised

[7]Although the ADA and Rehabilitation Act generally are construed to impose the same requirements on covered entities, the causation standards under the two acts are not the same. The ADA makes it unlawful for an employer to discriminate against a qualified individual "*because of* the disability of such individual," 42 U.S.C. § 12112(a) (emphasis added), whereas the Rehabilitation Act of 1973 prohibits entities receiving federal funding from discriminating "*solely* by reason of [a person's] disability." 29 U.S.C. § 794 (emphasis added). The Second Circuit has held that because of this difference, an ADA plaintiff "need not demonstrate that disability was the sole cause of the adverse employment action. Rather, he must show only that disability played a motivating role in the decision." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000); *see also Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999) (stating that causation requirements of ADA and Rehabilitation Act are "significantly dissimilar").

drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use," or who "is participating in a supervised rehabilitation program and is no longer engaging in such use."  29 U.S.C. § 705(20)(C)(ii).[8]

The import of these provisions, then, is that drug *addiction*, like alcoholism, is recognized as a disease that can be disabling, but that current drug *use* disqualifies a person from protection under these statutes.  *See Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002); *Buckley v. Consolidated Edison Co.*, 155 F.3d 150, 154 (2d Cir. 1998) (in banc).  "The statute plainly is designed to protect rehabilitated or rehabilitating substance abusers from retroactive punishment by employers." *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511, 518 (2d Cir. 1991), *cert. denied*, 506 U.S. 815 (1992).  To prevail on a claim under the Rehabilitation Act, therefore, "a recovering drug addict or alcoholic must demonstrate [not only] that [she] was actually addicted to drugs or alcohol in the past, [but also] that this addiction substantially limit[s] one or more of  [her] major life activities.'" *Regional Economic Community Action Program*, 294 F.3d at 47 (internal quotes omitted).

The University asserts that plaintiff has not stated a valid claim under the Rehabilitation Act because, by her own admission, she was using illegal drugs around the time of her discharge on June 13, 2003.  Plaintiff does not dispute that she was using drugs at that time, but contends that there is

---

[8]Likewise, current drug users are not protected by the HRL.  *See* 9 N.Y.C.R.R. § 466.11(h)(1) ("an individual who is currently using drugs illegally ... is not protected [from employment discrimination] by the Human Rights Law.  The law does protect an individual who is a recovered/recovering alcoholic or drug addict"); *see, e.g.*, *Burka v. New York City Transit Authority*, 680 F.Supp. 590, 601 (S.D.N.Y. 1988); *Jennings v. Leon*, 4 Misc.3d 1012 (Sup. Ct. Kings Co. 2004).

a factual issue concerning the correct date of her discharge, which is the relevant date for determining whether she was a "current" user of illegal drugs. *See Teahan*, 951 F.2d at 518 ("the relevant time for assessment of [an employee's] 'current' status is the time of his actual firing"). Plaintiff contends that because the arbitration on the grievance that she filed over her termination is currently pending, her June 2003 discharge is only "conditional" at this point.

The relevant time period for determining whether an employee is a "current" drug user, thereby precluding that employee from being deemed disabled by virtue of her drug use, is the time of her actual discharge. *D'Amico*, 132 F.3d at 150; *Teahan,* 951 F.2d at 518-19; *McEniry v. Landy*, 84 N.Y.2d 554, 560 (1994) ("the inquiry must focus on petitioner's status as of the time of actual termination and not earlier") (citing *Teahan*). That does not mean that the employee must have literally used drugs on the date of her termination, but that her drug use must have been "severe and recent enough to classify [her] as a current substance abuser ... ." *D'Amico*, 132 F.3d at 150.

As stated, plaintiff admits that she was addicted to cocaine on June 13, 2003, when she received her termination letter. *See* Complaint ¶ 18. Plaintiff argues, however, that because of the pending arbitration on her grievance, there is a possibility that she will be reinstated to her job at Strong. Plaintiff–who alleges that about nine months after her termination, she entered and then successfully completed a drug rehabilitation program, *see* Complaint ¶ 14–takes the position that her termination is therefore "conditional," and that unless and until the arbitration proceedings terminate in the University's favor, there is no discharge date by which to determine whether she is a "current" drug user.

I find this argument unpersuasive. First, plaintiff's reliance on the Second Circuit's decisions in *Teahan* and *D'Amico* is misplaced, because in each of those cases there was a clear interval

between the date on which the employer began taking steps to discharge the plaintiff and the date on which the plaintiff was actually terminated.

In *Teahan*, for example, the employer charged the employee on December 28, 1987 with excessive absenteeism (which had been caused by his excessive drinking and drug use). Because the applicable CBA mandated that certain procedures be followed before an employee could be terminated, the employee was not actually terminated until April 11, 1988, by which time he had entered and successfully completed a drug rehabilitation program, and his job performance had improved to a satisfactory level.

Similarly, in *D'Amico*, the plaintiff firefighter tested positive for cocaine on December 13, 1988, but was allowed to continue working on light duty pending the outcome of disciplinary proceedings. The plaintiff entered an outpatient drug treatment program, which he successfully completed on May 15, 1989. At a disciplinary hearing in June 1989, however, an administrative law judge found the plaintiff guilty of cocaine use in December 1988 and recommended that he be terminated. Plaintiff's employment was terminated on September 8, 1989, effective September 5.

In both *Teahan* and *D'Amico*, the plaintiffs filed actions under the Rehabilitation Act, and the district courts granted summary judgment in favor of the employers. Although the outcomes on appeal were different, in each case the Second Circuit held that the "relevant time" to assess the plaintiff's status as a "current" abuser of alcohol or drugs was "the time of his actual firing." *Teahan*, 951 F.2d at 518; *accord D'Amico*, 132 F.3d at 150.[9]

---

[9]In *Teahan*, the court reversed with directions to reinstate the complaint. In *D'Amico*, the court found that although there was an issue of fact about whether plaintiff was a "current" drug user at the time of his discharge, the plaintiff's "history of cocaine addiction, together with the [employer] FDNY's judgment as to the possibility of, and the risks inherent in, a relapse,

(continued...)

In contrast, plaintiff in the case at bar was not simply suspended on June 13, 2003; she was terminated outright.  There is no suggestion anywhere in the complaint that the University merely commenced proceedings that could or did eventually lead to her discharge; the June 13 letter from Rampello stated in no uncertain terms that plaintiff's "employment was terminated effective immediately."  Complaint Ex. A.  That could not have been any clearer.  Plaintiff ceased working for the University on June 13, 2003, and there is no indication in the complaint that she worked a single day at Strong after that date.[10]

That plaintiff subsequently invoked her right under the CBA to file a grievance over her termination, or that the grievance is now in arbitration, does not render her termination "conditional," nor does it mean that there is no discharge date for purposes of determining whether plaintiff falls within the exclusion for "current" drug users.  Plaintiff offers no authority (other than *Teahan* and *D'Amico*, which are factually inapposite) for such a proposition, which I find to be logically unsupportable as well.  In *Teahan* and *D'Amico*, the employers took steps to determine *whether* the employees would be fired, and by the time the employees actually were fired, they had stopped using drugs.  Here, the University *did* fire plaintiff, at a time when she admits she was using cocaine.  She is now challenging that decision through the grievance process, but that does not render her discharge "conditional."[11]

---

[9](...continued)
justified the FDNY's decision to terminate his employment."  132 F.3d at 151.

[10]The complaint itself seems implicitly to recognize the finality of plaintiff's discharge on that date.  *See* Complaint ¶ 1 (stating that plaintiff "was fired on June 13, 2003").

[11]Plaintiff does not appear to be seeking reinstatement in this action, but the fallacy of her position can be illustrated by the following hypothetical.  Assume a person is fired for using

(continued...)

-15-

As the Second Circuit stated in *Teahan*, "[t]he statute plainly is designed to protect rehabilitated or rehabilitating substance abusers from *retroactive* punishment by employers."  951 F.2d at 518 (emphasis added).  Plaintiff would have the Court turn this shield into a sword, allowing an employee to successfully sue her former employer for disability discrimination based on events (*i.e.* the cessation of drug use) that occur *after* the employee's termination.  That is not what these statutes are designed to do.[12]

_____

[11](...continued)
drugs in 2000, and was in fact using drugs at the time.  He then successfully undergoes drug treatment, stops using drugs, and files an action under the ADA or Rehabilitation Act seeking reinstatement.  Applying plaintiff's logic, such a person could argue that the possibility that he might prevail in his lawsuit and be reinstated to his former position renders his discharge "conditional," meaning that the court could not even consider whether to apply the current-drug-user exception.  Such a result would be plainly absurd and is not supported by the case law.

[12]I also note that, although neither party seems to allege that the University was aware of plaintiff's drug addiction when it terminated her, plaintiff does not appear to dispute that, if June 13, 2003 is the relevant date, the current-drug-user exception would apply.  The Court also finds that the University's apparent lack of knowledge of plaintiff's drug use would pose no impediment to the application of the exception.  In *Teahan*, the Second Circuit held that "termination by an employer subject to the Act which is justified as being due to absenteeism shown to be caused by substance abuse is termination 'solely by reason of' that substance abuse for purposes of § 504."  951 F.2d at 517.  I see no reason not to apply that logic in determining whether an employer without knowledge of an employee's drug use "acted on the basis of such use" in firing her.  In other words, if the employer's subjective reason for firing the employee was excessive absenteeism, and the absenteeism was caused by the employee's drug use, the employer could be said to have "acted on the basis of" the employee's drug use even though the employer was unaware of the reason for the absenteeism.  (Of course, if plaintiff's absenteeism was *not* caused by her drug use, the University would be entitled to fire her anyway.)

-16-

**C. Plaintiff's FMLA Claim**

Plaintiff's FMLA claim is based on her allegation that the University failed to post notices informing employees of their rights under the FMLA as required by law.[13]  As a result, plaintiff contends that she was unaware that she was entitled to up to twelve weeks of leave to go through drug rehabilitation.

Under the FMLA, a covered employee can take up to twelve weeks of leave during any twelve-month period if the employee is suffering from a "serious health condition" which makes her "unable to perform the functions of [her] position."  29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.114(a)(2)(i).  A serious health condition is one which requires "inpatient care in a hospital, hospice, or residential medical care facility" or continuing treatment by a health care provider.  29 U.S.C. § 2611(11).

Like the Rehabilitation Act, the FMLA does not contain any blanket treatment of substance abuse as either qualifying or disqualifying an employee from coverage.  On the one hand, substance abuse requiring rehabilitation can constitute a "serious health condition" under the statute.  *See*, *e.g.*, *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 488 (6th Cir. 2005) (alcoholism); 29 C.F.R. § 825.114(d) ("Substance abuse may be a serious health condition if the conditions of this

---

[13]Section 2619(a) of Title 29 provides that

Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees and applicants for employment are customarily posted, a notice, to be prepared or approved by the Secretary, setting forth excerpts from, or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge.

A willful failure to comply with this requirement may lead to the assessment of a civil penalty of up to $100 for each separate offense.  29 U.S.C. § 2619(b).

section [enumerating what is a 'serious health condition'] are met.  FMLA leave may only be taken

for treatment for substance abuse by a health care provider or by a provider of health care services

on referral by a health care provider."

The applicable regulations also provide, however, that "absence because of the employee's

use of the substance, rather than for treatment, does not qualify for FMLA leave."  29 C.F.R.

§ 825.114(d).  In addition, the regulations state that

> FMLA leave is available for treatment for substance abuse provided the conditions of
> § 825.114 are met.  However, treatment for substance abuse does not prevent an employer
> from taking employment action against an employee.  The employer may not take action
> against the employee because the employee has exercised his or her right to take FMLA leave
> for treatment.  However, if the employer has an established policy, applied in a non-
> discriminatory manner that has been communicated to all employees, that provides under
> certain circumstances an employee may be terminated for substance abuse, pursuant to that
> policy the employee may be terminated whether or not the employee is presently taking
> FMLA leave.

29 C.F.R. § 825.112(g).

To state a cause of action under the FMLA for denial of medical leave, a plaintiff must

ordinarily allege that:  (1) she was an eligible employee under the FMLA; (2) the defendant was an

"employer" withing the meaning of the FMLA; (3) plaintiff was entitled to leave under the FMLA;

(4) plaintiff requested leave or gave adequate notice of her intent to take leave; and (5) she was

denied benefits to which she was entitled under the FMLA.  *Geromanos v. Columbia Univ.*, 322

F.Supp.2d 420, 427 (S.D.N.Y. 2004).  The University does not at this point appear to dispute that

plaintiff has adequately alleged the first three of those five elements, but contends that plaintiff has

not made out a *prima facie* claim under the FMLA because she does not allege that she requested

leave or notified her superiors of her intention to take medical leave.  The University also notes that

plaintiff alleges that she did not enter drug rehabilitation until March 17, 2004, some nine months after her termination.  Complaint ¶ 14.

As stated, though, plaintiff alleges that she was unaware of her rights under the FMLA at the time of her termination because the University failed to post notices informing employees of their rights under that Act, or to otherwise communicate to plaintiff what her statutory rights were.  She alleges that she did not inform the University of her drug addiction prior to her termination "because she thought that the defendant might view her disabilities as shameful and view her as an undesirable employee."  Complaint ¶ 16.

As noted, the FMLA requires employers to post notices informing them of their rights under the Act.  *See* n. 12, *supra*.  The implementing regulations also set forth additional notice provisions, *see* 29 C.F.R. §§ 825.301(a)(1), (a)(2), (b)(1)(i)-(viii), and (b)(2)).  *But see Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999) (describing regulatory notice provisions as "highly ambiguous").

In *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001), the plaintiff alleged that her former employer had violated her rights under the FMLA by denying her medical leave, but there was a dispute about whether she had amassed the 1250 hours of work in the twelve months prior to her leave request, which is a precondition to coverage under the Act.  *See* 29 U.S.C. § 2611(2)(A).  The plaintiff also alleged, however, that the employer had failed to post notices informing employees of their FMLA rights, and that if she had known about the minimum-hour requirement, she would have made sure to work the necessary hours before submittng her leave request.

On appeal from the district court's grant of summary judgment for the employer, the Second Circuit vacated and remanded, in part because of the plaintiff's allegations concerning the employer's failure to post required notices. In doing so, the court noted the existence of case law standing for the proposition (the validity of which the court found it unnecessary to address) that "under the proper circumstances, a distinct cause of action lies for an employer's failure to post a notice where that failure leads to some injury," such as where the lack of notice causes an eligible employee to unwittingly forfeit his FMLA rights. *Id.* at 723 (citing *Fry v. First Fidelity Bancorporation*, No. Civ. A. 95-6019, 1996 WL 36910 (E.D.Pa. Jan. 30, 1996). Under that principle, the court stated, only an eligible employee (*i.e.*, one who has worked the minimum number of hours) is entitled to pursue a claim under the FMLA. *Id.* at 724.

The *Kosakow* court added, however, that even with an otherwise ineligible employee, "nothing prevents a court from exercising its equitable powers to estop a party from raising a particular claim or defense. ... If all the elements of equitable estoppel are met, an employer may be estopped from challenging an employee's eligibility as a result of the employer's misconduct in failing to post the required notice." *Id.* The court explained that "[u]nder federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." *Id.* (citing *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)).

Stating that "[w]hether equitable estoppel applies in a given case is ultimately a question of fact," *id.* at 725, the court found that, even assuming that the plaintiff in *Kosakow* would be unable to show that she had met the minimum-hours requirement for coverage under the FMLA, she "ha[d]

raised a genuine issue of fact with respect to the second and third elements of equitable estoppel."

*Id.* at 725.  The court concluded that the defendant

> New Rochelle was under a legal duty to inform its employees of the protections of the FMLA
> and what was required of its employees in order that they qualify for those protections.  If
> New Rochelle failed to post the required notices or include the required information in its
> employee manual, then New Rochelle failed to fulfill this legal duty and would have
> deprived Kosakow of the opportunity to take her leave under the shelter of the FMLA.  In
> such circumstances, it could not be argued that Kosakow had not met the requirements of the
> statute if this shortcoming were a result of New Rochelle's failure to relay those requirements
> to her.

*Id.* at 727.

The case at bar presents a different factual situation, but arguably the same principles should

apply.  There is no dispute here that plaintiff had worked the requisite number of hours.  Instead,

plaintiff alleges that she did not even know that she *could* ask for medical leave to seek drug

treatment because the University failed to inform her of that fact by posting notices in her workplace.

The University contends in response that plaintiff's own, admitted actions–particularly her delay in

seeking treatment until months after her termination, plus her admission that at the time of her

discharge "she had accumulated some sick leave and several weeks vacation time," Complaint

¶ 7–belie her allegation that, had she been aware of her eligibility to do so, she would have sought

FMLA leave to enter an inpatient drug rehabilitation program on or prior to June 13, 2003.

That may be a reasonable inference, but it is not one that the Court can properly draw on a

motion to dismiss under Rule 12(b)(6).  The fact that plaintiff had unused vacation time available

to her at the time of her discharge might tend to undercut her allegation that, had she been aware of

her rights, she would have taken medical leave under the FMLA to seek drug treatment, but it does

not mean that she has not stated a facially valid claim, at least at the pleading stage.  Conceivably,

an employee who does not know that she might be entitled to leave under the FMLA to seek help with a drug problem might be loath to take vacation time to do so, out of fear that the employer would get word of the reason for her "vacation" and fire her.  Likewise, one might reasonaby conclude from the fact that plaintiff did not enter an inpatient program until months after her discharge that she had no desire to seek rehabilitation in June 2003, but again, to draw such a conclusion would require the Court "to assay the weight of the evidence which might be offered in support" of plaintiff's claim, *Ryder Energy Distribution Corp.*, 748 F.2d at 779, which is impermissible when deciding a motion to dismiss for failure to state a claim.

This should not be taken to mean that the Court finds that plaintiff *did* have a right under the FMLA to medical leave for drug treatment, or that she is likely to prevail on this claim.  Both this claim and plaintiff's Rehabilitation Act claims have some obvious weaknesses, but it is not the Court's task at this point to decide whether I think she *will* prevail; it is only to determine whether, based on the facts alleged, she *might* prevail, and I am unable to say, based solely on the allegations in the complaint, that she cannot.

As stated, the FMLA does provide under some circumstances for medical leave to seek help with substance abuse problems, but it also permits termination of an employee who is using drugs, pursuant to "an established policy, applied in a non-discriminatory manner *that has been communicated to all employees*, that provides under certain circumstances an employee may be terminated for substance abuse ... ."  29 C.F.R. § 825.112(g) (emphasis added).  What is disputed

here, though, is exactly what, if anything, was "communicated to all employees" concerning employee drug abuse.[14]

In that regard, I note that the University has submitted affidavits of two individuals, Ibrisimovic and Kathy Miner, the University's Human Resources Manager of Employment, in which they make certain assertions about what notices relating to the FMLA, Rehabilitation Act and other employment-related statutes are posted at the University, and where they are located.  *See* Dkt. ##12-3, 12-4, and 19-1.  Plaintiff has also submitted a declaration refuting Miner's and Ibrisimovic's assertions.  Dkt. #18.

"When matters outside the pleadings are presented in support of, or in response to a Rule 12(b)(6) motion, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.'"  *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)).  "Thus, a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants ... in ruling on a 12(b)(6) motion to dismiss."  *Id.* (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).

---

[14]Although plaintiff does not assert a claim under the CBA, I also note that the CBA, while providing that the University "shall have the right to discharge, suspend or discipline any Employee for just cause," Dkt. #12-3, Art. XXVII(1), also contains a "Memorandum of Understanding" stating that the University and plaintiff's union "recognize[d] that substance abuse may be a treatable illness," and that "[e]mployees with substance abuse problems should be identified and urged to seek assistance, treatment, and rehabilitation." *Id.* at 64.  That same memorandum reaffirmed the University's "intent to vigorously enforce disciplinary rules (which may include termination) in instances where Employee impairment due to substance abuse has impacted Hospital operations," *id.*, but these provisions might nonetheless lend some support to plaintiff's allegations that she would have attempted to seek help sooner had she known that the University would permit her to do so without terminating her.

As explained above, this notice issue is central to the merits of plaintiff's claims under the FMLA and the Rehabilitation Act.  From both a legal and factual standpoint, however, it has not been adequately addressed by the parties, and this issue seems incapable of resolution without resort to materials outside the four corners of the complaint.  Since discovery in this case is not yet complete, I believe that converting the motion into a summary judgment motion is not appropriate at this point.  Accordingly, to the extent that the Court has not otherwise ruled on the issues raised by the motion, the Court denies the University's motion to dismiss without prejudice to the filing of a motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure should the facts warrant it, under principles set forth in Rule 11, Federal Rules of Civil Procedure.  *See Twisted Records v. Rauhofer*, No. 03 Civ. 2644, 2005 WL 517328, at *4 (S.D.N.Y. Mar. 3, 2005) (where parties have not had a reasonable opportunity to present all material made pertinent to the motion by Rule 56, "the motion under Rule 12(b)(6) is appropriately denied without prejudice"); *Madison v. Wright*, No. 02 Civ. 10299, 2004 WL 816429, at *2 (S.D.N.Y. Apr. 13, 2004) (denying motion to dismiss without prejudice with instructions to refile as a motion for summary judgment); *Reid v. Marrinaccio*, No. 00 Civ. 5164, 2003 WL 289832, at *1 (S.D.N.Y. Feb. 10, 2003) (same).

**III. Plaintiff's Motion to Strike**

Plaintiff has moved to strike certain affirmative defenses and individual paragraphs of defendants' answer, largely because plaintiff believes that the objected-to portions of the answer contain misstatements of fact or law.  To a great extent, this motion is moot because many of the affirmative defenses relate to plaintiff's claims that have now been dismissed.

To the extent that the motion is not moot, it is denied.  Motions to strike are disfavored and will not be granted unless it is clear that the allegations in question can have no possible bearing on

the subject matter of the complaint, or unless it appears to a certainty that plaintiff would succeed despite any facts which could be proved in support of the defense. *William Z. Salcer, Panfeld, Edelman et al. v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Nextel of New York, Inc. v. City of Mount Vernon*, 361 F.Supp.2d 336, 340 (S.D.N.Y. 2005); *Gleason Works v. Oerlikon Geartec AG*, 238 F.Supp.2d 504, 520 (W.D.N.Y. 2002). I do not find that the defenses in question are insufficient as a matter of law, or that plaintiff will be prejudiced by allowing the University to assert them. The validity of these defenses can best be tested in the context of a summary judgment motion or at trial.

## CONCLUSION

Plaintiff's motion to strike (Dkt. #7) is denied.

Defendants' motion to dismiss the complaint (Dkt. #12) is granted in part. Plaintiff's claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, are dismissed.

In all other respects, defendants' motion to dismiss is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
   August 22, 2005.