UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA GILMORE,

                          Plaintiff,

                                                                       <u>DECISION AND ORDER</u>

                                                                       05-CV-6037L

          v.

UNIVERSITY OF ROCHESTER,
Strong Memorial Division,
MARIE RAMPELLO, R.N.,
ALLEN IBRISIMOVIC,
CHRISTIAN LEE JEFFERSON,
FAY NORTON,
CHARLES MURPHY,

                          Defendants.
_____

      Plaintiff, Debra Gilmore, commenced this action against her former employer, the University of Rochester, Strong Memorial Hospital Division ("the University"), and several individual defendants, alleging that she was unlawfully terminated from her employment at Strong Memorial Hospital ("Strong") on the basis of her race and disability. Plaintiff also alleges that the University unlawfully denied her unpaid leave so that she could seek certain medical care. Plaintiff sued the University and several individuals, who at all relevant times were employees or officials of the University.

On September 1, 2005, the Court issued a Decision and Order that granted in part defendants' motion to dismiss the amended complaint, and dismissed plaintiff's claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the New York State Human Rights Law ("HRL"), N.Y. Exec. L. § 296. That left only one cause of action in the case: plaintiff's claim against the University under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

On October 14, 2005, plaintiff, without leave of court, filed a second amended complaint (Dkt. #24), naming the same defendants as before. The second amended complaint contains many of the same allegations as the first amended complaint, although it also adds some factual allegations. It asserts one cause of action against all the defendants for race discrimination under § 1981, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d, and the HRL, and another cause of action against the University under the FMLA.

On October 27, 2005, defendants filed an answer to the second amended complaint. The answer asserts ten affirmative defenses, including the defenses that the Court's September 1 Decision and Order had dismissed all of plaintiff's claims except her FMLA claim against the University, and that the second amended complaint fails to state a claim upon which relief can be granted.

The day after filing their answer, defendants filed a motion to dismiss the second amended complaint. The bases for the motion are that: (1) plaintiff cannot amend her complaint without leave of court: (2) plaintiff has failed to state a claim under Title VI; and (3) the claims against all

but one of the individual defendants should be dismissed for failure to plead their personal involvement in the acts giving rise to plaintiff's claims.[1]

On November 28, 2005, plaintiff filed a cross-motion asking "for an order *nunc pro tunc* granting leave to amend the amended complaint if this Court determines that the second amended complaint was filed in error." Plaintiff also asks the Court to grant her further leave to amend "if this Court finds that her amended complaint or second amended complaint, or any portion thereof, fails to state a claim upon which relief may be granted." Dkt. #26.

**DISCUSSION**

Rule 15(a) of the Federal Rules of Civil Procedure provides in part that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served ... . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although a motion to dismiss is not a "responsive pleading" for purposes of this rule, *see Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996), the Second Circuit has concluded that the right to amend terminates upon the issuance of an *order* granting a motion to dismiss. *Elfenbein v. Gulf & Western*

---

[1] Although the motion is styled as a motion to dismiss under Rule 12(b)(6), because it was filed after the defendants' answer I will deem it to be a motion for judgment on the pleadings under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 124 (2d Cir. 2001) ("the district court could have considered such an untimely Rule 12(b)(6) ... motion to dismiss as a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings"); *see, e.g., Yale Auto Parts, Inc. v. Johnson*, 593 F.Supp. 329, 330-31 (D.Conn. 1984), *aff'd*, 758 F.2d 54 (2d Cir. 1985); *Bowen v. Pan American World Airways, Inc.*, 474 F.Supp. 563, 567 (S.D.N.Y. 1979).

*Indus., Inc.*, 590 F.2d 445, 448 n. 1 (2d Cir. 1978); *Swan v. Board of Higher Educ. of the City of New York*, 319 F.2d 56, 60-61 (2d Cir. 1963). Although plaintiff contends that this rule does not apply where the court has only dismissed part of the complaint, at least one district court from within this circuit has applied the rule in that situation. *See Fezzani v. Bear, Stearns & Co.*, No. 99CIV0793, 2005 WL 500377, at *2 (S.D.N.Y. Mar. 2, 2005).

As a practical matter, this is a moot issue, since plaintiff has now asked the Court to grant leave to amend *nunc pro tunc*. I see no point in denying that motion on purely procedural grounds, since plaintiff could simply move for leave to amend prospectively. I will therefore grant defendants' motion to dismiss the second amended complaint on the ground that plaintiff failed to seek leave to amend, but I will also consider plaintiff's motion for leave to amend on its merits, treating the second amended complaint as a proposed third amended complaint.

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). *See also Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (a district court has discretion to deny leave to amend a complaint "if there is a good reason for it, such as futility"); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend") (per curiam). An amendment to a pleading is futile if it could not withstand a motion to dismiss under Rule 12(b)(6). *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

In my prior decision, I dismissed plaintiff's race discrimination claim–which is based on her termination for using profane language in a patient-care area –partly on the ground that "plaintiff's broad allegation that other employees at Strong swore occasionally without being disciplined, without more, is not suggestive of discrimination. She does not allege that those other employees used this particular profanity, that they swore around patients, or that none of those other employees were black." Dkt. #21 at 9. In the second amended complaint, plaintiff now alleges that certain other employees of the University, all of whom are white, and whom plaintiff identifies by name, have used profanities in the patient-care area where plaintiff worked, and that none of them were disciplined for doing so.

"A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination ... ." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)). *See also Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) ("A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination"); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably").

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham*, 230 F.3d at 39. *See, e.g.*, *McMillan v. Castro*, 405 F.3d 405, 414-15 (6th Cir. 2005)

(discussing correctness of district court's instructions to jury concerning whether plaintiff and another employee were similarly situated); *Perez v. Texas Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 215 (5th Cir. 2004) (same). To show that she and certain other employees were similarly situated, "the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham*, 230 F.3d at 39 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

> What constitutes "all material respects' ... varies somewhat from case to case and ... must be judged based on (1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. In other words, there should be an "objectively identifiable basis for comparability."

*Id.* at 40 (quoting *Cherry v. American Tel. & Tel. Co.*, 47 F.3d 225, 229 (7th Cir. 1995) (internal citation omitted).

Here, it is questionable whether plaintiff was similarly situated to the other persons whom she identified in her complaint as having used profanities in a patient-care area without being disciplined for doing so. Plaintiff states that she was employed as a secretary, and the other persons consist of her supervisors and several physicians. In addition, some of the expletives that those persons allegedly used were not the same as the one that precipitated plaintiff's firing.

As stated, however, in deciding whether a proposed amendment would be futile, courts apply the same standards as those applied in deciding a motion to dismiss under Rule 12(b)(6). Under those standards, the court must draw all reasonable inferences in favor of plaintiff and accept as true all factual allegations in the complaint. "A court may dismiss a complaint [or deny leave to amend as futile] only if it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *Phillip v. University of Rochester*, 316 F.3d 291 (2d Cir. 2003). The issue, then, is not whether plaintiff ultimately will prevail but whether she is entitled to offer evidence to support her claims. *Swierkiewicz*, 534 U.S. at 512.

Here, I am not prepared to say at this point, with respect to the conduct at issue–the use of profane language in a patient-care area–that plaintiff and these other individuals were not similarly situated, or that plaintiff could never demonstrate that they were treated less harshly than plaintiff for comparable misconduct. Although as a secretary, plaintiff's job duties presumably differed from her supervisors' (and certainly from a physician's), that does not necessarily mean that she and they were not subject to the same standards of behavior where hospital patients were concerned. *Cf. Casanova v. General Mills Restaurants, Inc.*, No. 94-CV-4386, 1997 WL 473840, at *6 (E.D.N.Y. Aug. 15, 1997) (Hispanic plaintiff's claim of race discrimination was belied by fact that three other similarly situated non-Hispanic employees were also terminated for conduct similar to plaintiff's).

I also recognize that the University also gave other reasons for terminating plaintiff besides her use of profane language. In particular, the University cited plaintiff's chronic tardiness in the months leading up to her dismissal. Second Amended Complaint (Dkt. #22-1) ¶ 5. Although plaintiff contends that her tardiness was minimal and did not prevent her from successfully performing her job, the facts may ultimately prove otherwise. Again, though, I am unable at this stage to say that there is no conceivable set of facts consistent with plaintiff's allegations that would support her claim of race discrimination under § 1981 and the HRL.

I also find, however, that to the extent that plaintiff seeks to assert this claim under Title VI, the allegations of the second amended complaint to not support such a claim. Title VI prohibits racial discrimination in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "However, the broad language of this section is severely curtailed by a later section which provides that there is no 'judicial remedy for employment discrimination by institutions receiving federal funds unless ... providing employment is a primary objective of the federal aid ... ." *Barbero v. Catawba Valley Legal Services, Inc.*, Civ. No. 4:94CV115, 1995 WL 757738, at *3 (W.D.N.C. Sept. 21, 1995) (citing *Trageser v. Libbie Rehabilitation Ctr., Inc.*, 590 F.2d 87, 89 (4th Cir. 1978) (dismissing nurse's claim under Title VI against a private, for-profit nursing home which received federal funds), *overruled on other grounds by Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 628-31 (1984)).

Specifically, 42 U.S.C. § 2000d-3 provides that "[n]othing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."[2] Accordingly, "covered entities can only be sued for employment discrimination 'where a primary objective of the Federal financial assistance [to that program or activity] is to provide employment.'" *Reynolds v. School Dist. No. 1, Denver, Colorado*, 69 F.3d 1523, 1531 (10th Cir. 1995) (quoting 42 U.S.C. § 2000d-3); *see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport*,

---

[2]Although the statute refers only to actions "by any department or agency," it has been applied to suits by private individuals as well. *See Reynolds v. School Dist. No. 1, Denver, Colorado*, 69 F.3d 1523, 1531 n. 8 (10th Cir. 1995) (collecting cases); *Joseph v. Wentworth Inst. of Tech.*, 120 F.Supp.2d 134, 138 (D.Mass. 2000).

647 F.2d 256, 276 (2d Cir. 1981) ("for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment") (citations omitted), *cert. denied*, 455 U.S. 988 (1982)); *see*, *e.g.*, *Luallen v. Guilford Health Care Center*, No. 1:02CV00738, 2003 WL 23094916, at *11 (M.D.N.C. Dec. 18, 2003) (granting summary judgment for defendant hospital on Title VI claims brought by nurses who had been employed at hospital, since plaintiffs did not dispute that hospital received federal funds only in the form of Medicare and Medicaid and that it received no federal funds for the purpose of employing individuals).

In the case at bar, the second amended complaint alleges that the University "receives federal funds." Dkt. #22-1 ¶ 3. There is no allegation, or any indication elsewhere in the record, that those funds are primarily intended to provide employment. Plaintiff's claim under Title VI is therefore fatally flawed, and leave to amend to assert such a claim is denied as futile.[3]

Defendants also contend that plaintiff has failed to state a claim against individual defendants Allen Imbrisimovic, Christian Lee Jefferson, Fay Norton and Charles Murphy, because plaintiff has not alleged that they were personally involved in the alleged violations of plaintiff's rights. "In order to make out a claim for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action ... . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.'" *Patterson v. County*

---

[3]The case relied upon by plaintiff–*Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439 (9th Cir. 1994), *cert. denied*, 513 U.S. 1127 (1995)–is not only distinguishable, since it did not involve the application of § 2000d-3, it also contradicts plaintiff's position that she can premise a Title VI claim on allegations of discrimination suffered by patients at Strong. *See id.* at 1448 (holding that plaintiff physician lacked standing to assert Title VI claim alleging discrimination against his patients).

*of Oneida, New York*, 375 F.3d 206, 229 (2d Cir. 2004) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). To demonstrate personal involvement by a supervisory official, a plaintiff must show that he "(1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). The analysis is similar under the HRL. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) ("a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL").

In assessing the adequacy of the complaint, the Court must keep in mind that, under the Federal Rules, "a complaint need only meet the requirements of our 'simplified notice pleading standard [which] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Despite the liberality of that standard, though, a civil rights complaint must still allege *facts*. *See Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"), *cert. denied*, 525 U.S. 1154 (1999); *see also Montero v. Travis*, 171 F.3d 757, 761-62 (2d Cir. 1999) (claim against parole board chairman was properly dismissed as frivolous because plaintiff "never alleged any facts describing [chairman]'s personal involvement in the claimed constitutional violations") (2d Cir. 1999); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)

("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice"). If all that a plaintiff need do is assert the conclusion that a defendant was personally involved, with no supporting factual allegations, "supervisory officials would automatically be subject to suit (if not liability) every time one of their subordinates committed a constitutional violation." *Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y. 2003).

Here, the second amended complaint states that defendant Marie Rampello, who allegedly made the decision to terminate plaintiff, "is sued as the principal actor," and that each of the other individual defendants "had the authority to prevent or reverse defendant Rampello's decision to fire. Instead of preventing or reversing, the remaining defendants participated in the decision, or ratified it, or condoned it. They are sued as aiders and abettors." Dkt. #22-1 ¶ 3. In addition, plaintiff's memorandum of law contains a "bill of particulars" setting forth more detailed factual allegations about the individual defendants. These include allegations that Jefferson denied plaintiff's grievance over her termination, that Ibrisimovic participated in the proceedings that led to plaintiff's discharge, and that Norton and Murray, as officers within the University's Human Relations Department, rejected certain "settlement proposals advanced by plaintiff to end the controversy." Dkt. #26 at 7.

While these allegations are thin, I find them sufficient at this early stage to state a claim for personal liability on the part of these defendants. Again, facts adduced in discovery may establish that these individuals were not sufficiently involved in the underlying events to give rise to liability on their part, but the Court's task at this juncture is simply to determine whether plaintiff has alleged enough to entitle her to offer evidence in support of her claims. *Swierkiewicz*, 534 U.S. at 512.

## CONCLUSION

Defendants' motion to dismiss the so-called second amended complaint (Dkt. #24) is granted, and that complaint is dismissed.

Plaintiff's motion for leave to file an amended complaint (Dkt. #26) is granted in part and denied in part. Plaintiff is directed to file a third amended complaint within twenty (20) days of the date of issuance of this Decision and Order.

In the third amended complaint, plaintiff may allege one cause of action for race discrimination and one cause of action for a violation of the FMLA. Plaintiff may not assert causes of action that have been dismissed in this decision or my prior decision of September 1, 2005, including claims under the ADA, and Title VI and Title VII of the Civil Rights Act.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 19, 2006.