UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA L. GILMORE,

                              Plaintiff,

                                                                          DECISION AND ORDER

                                                                          05-CV-6037L

                v.

UNIVERSITY OF ROCHESTER
Strong Memorial Division,

                              Defendant.
_____

      Plaintiff, Debra Gilmore, commenced this action against her former employer, the University of Rochester, Strong Memorial Hospital Division ("the University"), alleging various claims arising out of the termination of her employment at Strong Memorial Hospital ("Strong") in June 2003. Defendant has moved for summary judgment.

**PROCEDURAL BACKGROUND**

      For purposes of this Decision and Order, familiarity with the procedural history of this case is assumed, but the most salient portions of that history will be recited here. The complaint in this action was filed on January 28, 2005, against the University and several individual defendants. On

May 18, 2005,. Magistrate Judge Jonathan W. Feldman granted plaintiff's motion to amend the complaint (Dkt. #10), and plaintiff subsequently filed the first amended complaint.

On June 6, 2005, defendants filed a motion to dismiss the amended complaint (Dkt. #12). On September 1, 2005, the Court issued a Decision and Order, 384 F.Supp.2d 602, that granted in part and denied in part defendants' motion to dismiss the complaint. The Court dismissed plaintiff's claims under: the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and the New York State Human Rights Law ("HRL"), N.Y. Exec. L. § 296. That left plaintiff with one cause of action, against the University only, under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

On October 14, 2005, plaintiff, without leave of court, filed a second amended complaint (Dkt.# 22), naming the same defendants as before, and asserting claims under § 1981, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d, the HRL, and the FMLA. On January 19, 2006, the Court issued a Decision and Order, 410 F.Supp.2d 127, which granted defendants' motion to dismiss the second amended complaint, and granted plaintiff leave to amend the complaint again, to assert one cause of action for race discrimination and one cause of action under the FMLA. Pursuant to that order, plaintiff filed the third amended complaint the following month. Dkt. #28.

On March 8, 2007, Judge Feldman granted plaintiff leave to file a fourth amended complaint (Dkt. #37, #38). That complaint (Dkt. #39), which was filed the same day as Judge Feldman's order, asserts claims under the FMLA, the Rehabilitation Act, and the HRL.[1] All of these claims stem from

---

[1] In May 2008, plaintiff sought leave to file a fifth amended complaint, which would have
(continued...)

plaintiff's alleged prior impairment stemming from her past drug use.  Plaintiff does not at this point assert any claims of race discrimination.

## DISCUSSION[2]

**I. FMLA Claim**

**A. The Nature of Plaintiff's Claim**

Plaintiff's first cause of action is based on the FMLA.  Plaintiff asserts several different factual bases for this claim.

Plaintiff alleges that she was terminated from her employment in June 2003, after having worked as a secretary at Strong for 26 years.  The reasons given for her termination were excessive tardiness, failure to meet minimum standards for transcription of physician orders, and using profane language in a patient care area.

There is no dispute that during some of the time when plaintiff worked at Strong, up to and including the time of her termination, she was addicted to crack cocaine.  Plaintiff (who alleges that she has been "clean" since July 2005) alleges that her addiction constituted a "serious health

---

[1](...continued)
asserted additional claims under the ADA, the HRL, and plaintiff's collective bargaining agreement.  Judge Feldman denied that motion on May 30, 2008.  Dkt. #57.

[2]As stated, the Court has issued several substantive decisions in this case, and the factual background of this case is set forth in those decisions, familiarity with which is assumed. Particular facts will be recited here only as necessary.

condition" under the FMLA, and that she was therefore entitled to twelve weeks' leave per year to seek treatment for that condition. *See* 29 U.S.C. § 2612(a)(1)(D).

It does not appear, however, that plaintiff ever requested such leave. The gist of this aspect of her FMLA claim appears to be that the University did not sufficiently inform plaintiff of her rights under the FMLA, particularly by failing to post adequate notices advising employees of their FMLA rights. Under the applicable federal regulations, an employer must "prominently" post, "in conspicuous places where employees are employed, ... a notice explaining the Act's provisions and providing information concerning the procedures for filing complaints of violations of the Act" with the Department of Labor. 29 C.F.R. § 825.300(a).

Plaintiff also alleges that during much of the period preceding her termination, her mother was suffering from terminal cancer, and that plaintiff had to spend a considerable amount of time caring for her mother. The FMLA also provides that covered employees are entitled to twelve weeks' leave annually in order to care for a parent with a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

As with her claim related to drug addiction, however, it does not appear that plaintiff is alleging that the University violated the FMLA by denying her such leave. Rather, she alleges that she did take a single day's leave to care for her mother, and that the University violated the statute by "not designat[ing] that leave as FMLA leave," even though the University knew the reason for her request. Dkt. #39 ¶ 10. Under the applicable regulations, "[t]he employer's decision to designate leave as FMLA-qualifying must be based only on information received from the employee" or someone authorized to speak on the employee's behalf, and "[a]n employee giving notice of the need

for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice," but must only "state a qualifying reason for the needed leave ... ." 29 C.F.R. § 825.301.

**B. Plaintiff's Claim Relating to Drug Treatment**

Plaintiff's claim relating to drug treatment fails for a number of reasons. First, "'it is well settled that an employee has no private right of action' where an employer has failed to post the [required FMLA] notice." *Hayduk v. City of Johnstown*, 580 F.Supp.2d 429, 473 (W.D.Pa. 2008) (quoting *Deily v. Waste Mgmt. of Allentown*, 118 F.Supp.2d 539, 544 (E.D.Pa. 2000), *aff'd*, 55 Fed.Appx. 605 (3d Cir. 2003)). *See also Cinelli v. Oppenheim-Ephratah Cent. School Dist.*, No. 07-CV-235, 2008 WL 111174, at *5 n.14 (N.D.N.Y. Jan. 7, 2008) (stating that "the FMLA provides a statutory penalty for employers who fail to willfully fail to post notice of the pertinent FMLA provisions," and "itself, does not impose a private right of action by the employee"). *Cf. Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (employer's silence about an employee's eligibility for FMLA leave, in the face of the employee's announcement of intent to take such leave, amounted to a misrepresentation upon which equitable estoppel could be based).[3]

---

[3] As the court in *Hayduk* explained, an employee may be able to state a claim where an employer fails to advise the employee of her rights after having been made aware that the employee is eligible for FMLA, and a "failure to post does ... prevent an employer from taking 'any adverse action against an employee ... for failure to furnish the employer with advance notice of a need to take FMLA leave.'" *Id.* at 473 n.38 (quoting 29 C.F.R. § 825.300(b)). Those principles have no relevance to plaintiff's claim relating to her drug addiction, however, since there is no evidence that plaintiff ever informed her employer of her drug addiction or that she
(continued...)

Second, even if a cause of action does exist under some circumstances for an employer's failure to post a required notice, plaintiff's claim would fail. "To establish a claim for interference based on a failure to inform her of her FMLA rights, [plaintiff] must show that [her employer's] failure to give her the required notification caused her injury." *Capilli v. Whitesell Const. Co.*, 271 Fed.Appx. 261, 267 (3d Cir. 2008) (citing *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004)). *See also Kosakow*, 274 F.3d at 723 ("under the proper circumstances, a distinct cause of action lies for an employer's failure to post a notice where that failure leads to some injury"). *Cf. Downey v. Strain*, 510 F.3d 534, 541 (5th Cir. 2007) ("Downey proved that she was actually prejudiced by her employer's noncompliance with the [notice] regulations: had she received individualized notice, she would have been able to postpone her surgery to another FMLA period").

In the case at bar, plaintiff testified that following her termination on June 13, 2003, she continued to use crack cocaine "[r]ight until the time [she] went into rehab" in November 2003. Gilmore Depo. Tr. (Dkt. #52-4) at 64. There is no evidence that she had any desire to seek treatment sooner than that, or that she would have sought treatment prior to her termination had she been aware that she could take FMLA leave to do so. In fact, plaintiff's own testimony suggests that she would *not* have done so; when asked what she told her supervisors about why she was late for work nearly every day (which she now admits was due to her addiction and her use of crack cocaine prior to going to work each day), she responded that she "[p]robably blam[ed] it on [her] children, anything other than [her]self because [she] was in denial." Gilmore Depo. Tr. at 42-43.

---

³(...continued)
had any desire to seek drug treatment until months after her termination.

The record also makes clear that plaintiff *was* aware that she could ask for time off to seek drug treatment, even if she was unaware of a particular right to do so under the FMLA. Plaintiff testified that in 1996, when she was on disability leave after giving birth to her son, she asked for, and was granted, "extended leave." Gilmore Depo. Tr. at 36-37. She took "[m]aybe another month" off, during which she obtained drug treatment. *Id.* Again, plaintiff may not have known that she had a specific right under the FMLA to take time off for the express purpose of seeking drug treatment, but this shows that she must at least have been aware of the possibility that she could seek some type of leave for that purpose. Her failure to ask for *any* time off in 2003 in order to obtain drug treatment further demonstrates, then, that plaintiff was not prejudiced by the University's alleged failure to provide adequate notice of employees' FMLA rights, since there is no indication that she would have availed herself of such leave.

With respect to plaintiff's FMLA claim, I also note that plaintiff contends that defendant's arguments are foreclosed by my prior decision denying defendant's motion to dismiss that claim, under the "law of the case" doctrine. My prior decision allowing plaintiff's FMLA claim to go forward, however, was rendered in the context of a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The standards applied to that motion were significantly different from those to be applied to a motion for summary judgment, particularly since that decision was issued prior to the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), which stiffened the pleading requirements that must be met to survive a motion to dismiss. Under the pre-*Twombly* standards applied by this Court on the prior motion to dismiss, a complaint would not be dismissed for failure to state a claim "unless

it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Gilmore*, 384 F.Supp.2d at 607 (quoting *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003)).[4]

That is not the standard to be applied now, on defendant's motion for summary judgment. *See Apace Communications, Ltd. v. Burke*, 584 F.Supp.2d 591, 594 (W.D.N.Y. 2008) (contrasting the "relatively lenient [standard] for deciding a motion to dismiss for failure to state a claim" with "the much more demanding standard applicable to summary judgment motions"). *See also Keeshan v. Eau Claire Co-op. Health Centers, Inc.*, No. 3:05-3601, 2007 WL 2903962, at *22 (D.S.C. Oct. 2, 2007) ("a denial of a motion to dismiss on an issue does not preclude the granting of summary judgment on that same issue, as these motions are evaluated under different standards"). When a motion for summary judgment is properly made and supported, a party cannot defeat that motion by resting on mere allegations or denials set forth in her pleadings. Instead, a party's "response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).

Here, plaintiff has failed to point to any evidence suggesting that she wanted to seek treatment for her addiction at any time prior to her termination but that she was effectively prevented

---

[4]In *Twombly*, the Supreme Court "retire[d]" that "no set of facts" standard. 550 U.S. at 563. For a complaint to survive under the current *Twombly* standard, the plaintiff must "nudge[ her] claims across the line from conceivable to plausible ... ." *Id.* at 570.

from doing so by defendant's alleged failure to post adequate FMLA notices. Thus, plaintiff has failed to show that there is a genuine issue of fact concerning whether she was injured or prejudiced as a result of the University's alleged violation of the notice requirement. *See Santiago v. New York City Police Dep't*, No. 05 Civ. 3035, 2007 WL 4382752, at *18 (S.D.N.Y. Dec. 14, 2007) (granting summary judgment for defendant based on court's finding that plaintiff "necessarily cannot demonstrate that he was prejudiced by the purported failure of the Department to tell him about, and give him, FMLA leave"); *Blake v. Seabury & Smith, Inc.*, No. 06-CV-12161, 2007 WL 4126361, at *5 (E.D.Mich. Nov. 20, 2007) ("even if Defendant failed to technically comply with the FMLA's notice provisions, Plaintiff's claim under the FMLA would still fail because she has not demonstrated that she suffered any prejudice as a result of Defendant's alleged technical violation") (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)); *Roberts v. The Health Ass'n*, No. 04-CV-6637, 2007 WL 2287875, at *6 (W.D.N.Y. Aug. 8, 2007) (finding that "plaintiff has failed to establish that she was prejudiced by the alleged failure of the defendant to provide adequate notice of her FMLA rights, and grant[ing] defendant's motion for summary judgment with respect to this claim").

In addition, to the extent that she missed, or was late for work because of her addiction, plaintiff was not an "eligible employee" under the FMLA. *Kosakow*, 274 F.3d at 724. Although drug addiction itself may qualify as a "serious health condition" for FMLA purposes, FMLA leave may be taken only for *treatment* for a substance abuse problem, which, as stated, plaintiff apparently had no inclination to seek prior to her termination. 29 C.F.R. § 825.114(d). "On the other hand, absence because of the employee's use of the substance, rather than for treatment, does not qualify

for FMLA leave." *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). That plaintiff's habitual tardiness may have stemmed from her daily drug use, then, does not save this claim.

**C. Plaintiff's Claim Relating to her Mother**

Concerning plaintiff's claim relating to FMLA leave so that she could care for her mother, the undisputed evidence shows that plaintiff requested one day's leave, on a single occasion, so that she could take her mother to the hospital. That leave was granted, but plaintiff alleges that the University failed to designate it as FMLA leave. *See* Gilmore Depo. Tr. at 56-57. Plaintiff never asked for any other time off to care for her mother. *Id.* at 57. When asked why not, plaintiff responded, "I knew she was dying." *Id.* at 59.

As with her claim concerning drug treatment, plaintiff has thus failed to show any prejudice resulting from defendant's alleged FMLA violation. A "plaintiff must show that she was somehow prejudiced by Defendant's failure to designate her disability leave as FMLA leave for Defendant to be liable" for that failure. *Blake v. Seabury & Smith, Inc.*, No. 06-CV-12161, 2007 WL 4126361, at \*6 (E.D.Mich. Nov. 20, 2007) (internal quotation marks and alterations omitted); *Menzies v. La Veta School Dist. RE-2*, No. CIVA05CV00287, 2006 WL 1517723, at \*7 (D.Colo. May 26, 2006) ("in order for an employer's failure to expressly designate leave as FMLA leave to give rise to a cognizable claim, the employee must be prejudiced by that failure"). *See also Sims v. Schultz*, 305 F.Supp.2d 838, 845 (N.D.Ill. 2004) (denying motion to dismiss FMLA claim under Rule 12(b)(6)

because it was "conceivable" that plaintiff could show that he was prejudiced by employer's failure to designate his leave as FMLA leave).

Here, there is no evidence that plaintiff would have done anything differently had her one-day absence been designated as FMLA leave, nor is there any indication in the record that plaintiff was led to believe that she could not take additional time off to care for her mother. Accordingly, this claim fails. *See, e.g.*, *Duchesne v. Shaw Group Inc.*, No. 06-607, 2008 WL 4544387, at *5 (W.D.La. Sept. 10, 2008) (recommending that employer's motion for summary judgment be granted where "the record [wa]s devoid of any evidence that because of [the employer's] actions in informing Duchesne that he was ineligible for FMLA leave or in requiring Duchesne to submit a doctor's note each time he missed work to visit his mother, Deville reported to work rather than visited to his mother," and noting that "the record reveals that while Duchesne may have been denied FMLA leave in a technical sense, in reality, he took all of the leave he wished to take"), *report and recommendation adopted*, 2008 WL 5746959 (W.D.La. Oct. 9, 2008).

**D. Plaintiff's Claim Relating to the University's Failure to Rehire Her**

Plaintiff also alleges that defendant violated the FMLA "by refusing to rescind the termination" of plaintiff's employment. Fourth Amended Complaint (Dkt. #39) ¶ 12. That allegation apparently relates to plaintiff's unsuccessful application for reemployment with the University in September 2006.

Plaintiff has not articulated any viable theory under which such a claim could proceed. There is authority that an employer may be liable for holding a former employee's past use of FMLA leave

against her when the former employee applies for reemployment. *See, e.g.*, *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001) (genuine issue of material fact existed as to "whether BellSouth refused to rehire Smith based on his past use of FMLA leave, or whether it based its decision on non-FMLA attendance problems and other factors"); *Austin v. Jostens, Inc.*, No. 07-2380, 2008 WL 4642277, at *11 (D.Kan. Oct. 16, 2008) ("If [plaintiff] proves that his past use of FMLA leave was a motivating factor in [defendant's] refusal to rehire him, this is precisely the type of discrimination that the FMLA seeks to prohibit") (quoting *Smith*, 273 F.3d at 1314) (alterations in original); *Wilson v. Sunsweet Growers, Inc.*, No. CV.2-06-040, 2007 WL 2418736, at *3 (E.D.Cal. Aug. 24, 2007) ("employers are prohibited from using prior use of FMLA-leave as a negative factor in employment decisions regarding employees or prospective employees"); *see also* 29 U.S.C. § 2614(a) (following FMLA leave, employee is entitled to be reinstated to his former position, or a substantially similar position).

Here, however, plaintiff makes no such allegation, nor could she, on the facts presented. Her theory appears to be, simply, that because she was (allegedly) denied her rights under the FMLA prior to her termination, defendant's denial of her subsequent job applications constituted an additional FMLA violation. As explained above, however, there was no FMLA violation in the first place, and even if there were, there is no legal basis for such a claim on these facts, since there is no causal connection between the prior alleged FMLA violation and the subsequent refusal to rehire. *See Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F.Supp.2d 1336, 1353 (M.D.Ala. 2009) (plaintiff's claim that former employer retaliated against her by denying her right under the FMLA to return to a position with the company "fails at the most fundamental level: Edwards does not

allege (or provide evidence showing) that she ever actually requested leave under the FMLA," and therefore, she never exercised a protected right under the FMLA); *see also Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 (10th Cir. 2006) (summary judgment for employer on employee's FMLA claim was appropriate where employee failed to demonstrate that FMLA leave was connected to her termination).

Finally, although the first cause of action is expressly premised on the FMLA, plaintiff also alleges in that claim that the University violated certain provisions of plaintiff's collective bargaining agreement ("CBA"). Plaintiff alleges that defendant's FMLA violation was "aggravated" by its violation of the CBA's provisions concerning substance abuse. Dkt. #39 ¶ 13. The CBA provided, for example, that the University would hold an employee's position for an employee who is undergoing treatment for substance abuse. Dkt. #39 ¶¶ 13-16.

It is not clear how whether plaintiff believes that these allegations state an FMLA claim in themselves, are merely evidentiary in nature, or are intended to state some separate cause of action, but regardless, they cannot survive defendant's motion for summary judgment. Even if the University had violated plaintiff's CBA, that would not in itself necessarily give rise to an FMLA claim.

An employer's violation of a CBA can give rise to a claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *see*, *e.g.*, *Devlin v. Transportation Communications Intern. Union*, 175 F.3d 121 (2d Cir. 1999), but here–apart from the fact that plaintiff has not alleged a claim under the LMRA–there is no evidence that the University did in fact violate the CBA. Plaintiff never asked for time off for drug treatment, nor did she inform her employer that she had

allege (or provide evidence showing) that she ever actually requested leave under the FMLA," and therefore, she never exercised a protected right under the FMLA); *see also Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 (10th Cir. 2006) (summary judgment for employer on employee's FMLA claim was appropriate where employee failed to demonstrate that FMLA leave was connected to her termination).

Finally, although the first cause of action is expressly premised on the FMLA, plaintiff also alleges in that claim that the University violated certain provisions of plaintiff's collective bargaining agreement ("CBA"). Plaintiff alleges that defendant's FMLA violation was "aggravated" by its violation of the CBA's provisions concerning substance abuse. Dkt. #39 ¶ 13. The CBA provided, for example, that the University would hold an employee's position for an employee who is undergoing treatment for substance abuse. Dkt. #39 ¶¶ 13-16.

It is not clear how whether plaintiff believes that these allegations state an FMLA claim in themselves, are merely evidentiary in nature, or are intended to state some separate cause of action, but regardless, they cannot survive defendant's motion for summary judgment. Even if the University had violated plaintiff's CBA, that would not in itself necessarily give rise to an FMLA claim.

An employer's violation of a CBA can give rise to a claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *see*, *e.g.*, *Devlin v. Transportation Communications Intern. Union*, 175 F.3d 121 (2d Cir. 1999), but here–apart from the fact that plaintiff has not alleged a claim under the LMRA–there is no evidence that the University did in fact violate the CBA. Plaintiff never asked for time off for drug treatment, nor did she inform her employer that she had

allege (or provide evidence showing) that she ever actually requested leave under the FMLA," and therefore, she never exercised a protected right under the FMLA); *see also Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 (10th Cir. 2006) (summary judgment for employer on employee's FMLA claim was appropriate where employee failed to demonstrate that FMLA leave was connected to her termination).

Finally, although the first cause of action is expressly premised on the FMLA, plaintiff also alleges in that claim that the University violated certain provisions of plaintiff's collective bargaining agreement ("CBA"). Plaintiff alleges that defendant's FMLA violation was "aggravated" by its violation of the CBA's provisions concerning substance abuse. Dkt. #39 ¶ 13. The CBA provided, for example, that the University would hold an employee's position for an employee who is undergoing treatment for substance abuse. Dkt. #39 ¶¶ 13-16.

It is not clear how whether plaintiff believes that these allegations state an FMLA claim in themselves, are merely evidentiary in nature, or are intended to state some separate cause of action, but regardless, they cannot survive defendant's motion for summary judgment. Even if the University had violated plaintiff's CBA, that would not in itself necessarily give rise to an FMLA claim.

An employer's violation of a CBA can give rise to a claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *see*, *e.g.*, *Devlin v. Transportation Communications Intern. Union*, 175 F.3d 121 (2d Cir. 1999), but here–apart from the fact that plaintiff has not alleged a claim under the LMRA–there is no evidence that the University did in fact violate the CBA. Plaintiff never asked for time off for drug treatment, nor did she inform her employer that she had

a drug problem. By plaintiff's own admission, she was terminated primarily for excessive tardiness that she had blamed on her "children, [or] anything other than" her drug abuse, "because [she] was in denial" at the time.

**II. Rehabilitation Act Claim**

Plaintiff's second cause of action alleges a violation of § 504 of the Rehabilitation Act and the HRL. These claims are based on plaintiff's application for reemployment following her termination.

Plaintiff alleges that in September 2006, she applied to the University for reemployment. At that point, plaintiff alleges, she "had been drug-free since July of 2005," Dkt. #39 ¶ 20, and was fully qualified for, and capable of performing the duties of, that position. Dkt. #39 ¶ 23.[5]

Plaintiff alleges, however, that she was turned down because of the University's "blanket polic[ies]" of "refusing to re-employ persons who were terminated for cause" and "giving preference to employee applicants for in-house transfers to vacant positions." Dkt. #39 ¶¶ 26, 27. The effect of those policies, plaintiff alleges, is that any former employee who was terminated for reasons relating to substance abuse is ineligible for reemployment, even if the former employee has successfully undergone drug rehabilitation. Plaintiff asserts that the University's denial of her application for reemployment pursuant to those policies violated § 504 and the HRL.

---

[5]Contrary to plaintiff's allegations in the complaint, she did not apply for reinstatement to her former position as a patient unit secretary. On her application form, she entered the job code numbers for two positions: Data Control Clerk II and Receptionist Clerk III. *See* Dkt. #52 Ex. F; Kathleen Miner Decl. (Dkt. #52 Ex. G) ¶ 3.

In order to make out such a claim, plaintiff must first establish a prima facie case of discrimination. *Regional Economic Community Action Program, Inc. v. City of Middletown* ("*Middletown*"), 294 F.3d 35, 49 (2d Cir.) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)), *cert. denied*, 537 U.S. 813 (2002). To establish a prima facie case of discrimination under the Rehabilitation Act, plaintiff must show that she is an individual with a disability, that she is otherwise qualified to perform the job in question with or without reasonable accommodation, that she suffered an adverse employment action solely on the basis of her disability, and that the defendant employer receives federal funds. *Basso v. Potter*, 596 F.Supp.2d 324, 332 (D.Conn. 2009) (citing 29 U.S.C. § 794) (other citations omitted).[6]

If the plaintiff makes out a prima facie case, then the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for their decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Middletown*, 294 F.3d at 49. "If the defendant meets that burden, 'the *McDonnell Douglas* framework ... disappear[s] and the sole remaining issue [is] discrimination *vel non*." *Middletown*, 294 F.3d at 49 (quoting *Reeves*, 530 U.S. at 142-43). The plaintiff "must then prove that the defendant[] intentionally discriminated against [her] on a prohibited ground." *Middletown*, 294 F.3d at 49. Only if the plaintiff "make[s] a substantial showing" that the defendant's proffered explanation was false will it then be "*permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 146-47.

---

[6]The standards applicable to plaintiff's claim under the HRL are substantially the same. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008); *Stephens v. Shuttle Associates, L.L.C.*, 547 F.Supp.2d 269, 36 NDLR P 246, 278 (S.D.N.Y. 2008).

Drug addiction is an "impairment," which can support a finding of a "disability" under the Rehabilitation Act. *Middletown*, 294 F.3d at 46. In addition, a refusal to rehire a former employee can constitute an adverse employment action. *See*, *e.g.*, *Duch v. Potter*, No. 06-12511, 2007 WL 2261400, at *4 (E.D.Mich. Aug. 6, 2007); *Duncan v. Washington Metropolitan Area Transit Authority*, 425 F.Supp.2d 121, 129 (D.D.C. 2006).

Where plaintiff's claim falters, however, is in the absence of evidence that plaintiff's alleged disability was causally related to the University's failure to rehire her. Plaintiff's job indicated that she had previously worked for the University, and that she had been fired. Dkt. #52 Ex. F. The University did have a policy in place stating that "staff who are involuntarily terminated for cause are not eligible for re-employment ...," that an employee who has been terminated "may be ineligible for reemployment within the University," and that "[i]nvoluntary termination for misconduct would be a valid reason for such a determination." Dkt. #52 Ex. J.

There is no evidence, however, that the University had a "blanket" policy under which anyone who had been fired for cause would never be considered for reemployment. More particularly, there is no evidence that the University had any policies specifically excluding from consideration for reemployment anyone who had been terminated for reasons having to do with substance abuse. The University states–and plaintiff has submitted no evidence to the contrary–that in practice, where an applicant for reemployment demonstrates a "positive work history" since her separation from employment with the University, the applicant will be considered for reemployment. Defendant's Statement of Material Undisputed Facts (Dkt. #52-3) ¶ 24.[7] An applicant who has not

---

[7]Plaintiff has not submitted her own statement of disputed material facts as required by
(continued...)

been employed since her termination by the University will typically not be considered for rehire. Dkt. #52 Ex. M at 15-16.

Here, plaintiff's November 2006 application for reemployment indicated that she had not been employed since being fired by the University in 2003. Dkt. #52 Ex. F. Under those circumstances, it was hardly unreasonable for the University not to give her application further consideration. There was simply nothing in her application indicating that there had been any change in her circumstances that would have rendered her more qualified to work for the University than she had been when the University fired her in 2003.

In addition, there is no evidence that anyone at the University who reviewed plaintiff's application for reemployment was aware that her prior termination had anything to do with plaintiff's drug addiction. The application itself made no mention of such matters, and plaintiff's personnel file from her prior employment with the University likewise contained no information regarding plaintiff's past drug use. Dkt. #52 Ex. L. Plaintiff's assertion that the relevant decisionmakers must have known about plaintiff's history of drug use because of the pendency of this lawsuit (which was commenced in 2005) is based on nothing more than rank speculation.

Moreover, as stated, plaintiff must show that her alleged disability was the *sole* reason for defendant's decision not to rehire her. *See Middletown*, 294 F.3d at 49 (noting that "[t]o establish a prima facie case of discrimination under the Rehabilitation Act, ... the plaintiffs must show that

---

[7](...continued)
Local Rule 56.1(b). Accordingly, the facts asserted by defendant in its Rule 56.1 statement (Dkt. #52-3) (which, with respect to the University's policies in this regard have not otherwise been put in dispute by plaintiff) are deemed to be admitted by her. *See Bonet v. McGinnis*, No. 01-CV-6078, 2004 WL 2075433, at *3 (W.D.N.Y. Sept. 16, 2004) (accepting truth of assertions in defendants' Rule 56.1 statement, where plaintiff had failed to submit response).

the defendants [took action against them] 'solely' because of the[ir] disability"). Plaintiff has not even presented evidence that her alleged disability played *any* role in the denial of her job application, much less that it was the *sole* reason for that challenged action.

Finally, to the extent that this claim rests on a theory of disparate impact, it fares no better. To make out such a claim, plaintiff would have to show that the University's facially neutral policies regarding the rehire of former employees who were fired for cause had a dispropotionately adverse impact on persons with disabilities. *See Middletown*, 294 F.3d at 52-53 ("A disparate impact analysis examines a facially-neutral policy or practice ... for its differential impact or effect on a particular group. ... For example, a handicapped person might challenge a zoning law that prohibits elevators in residential dwellings") (internal quotation marks omitted). *See, e.g.*, *C.D. v. New York City Dep't of Educ.*, No. 05 Civ. 7945, 2009 WL 400382, at *7 (S.D.N.Y. Feb. 11, 2009) (disabled students made out disparate impact claim under Rehabilitation Act with respect to city education department's policy concerning school meals, where policy was "facially neutral, but ha[d] a disproportionate impact on disabled students"). *See also Hollonbeck v. U.S. Olympic Committee*, 513 F.3d 1191, 1197 (10th Cir. 2008) ("The Supreme Court has held that disparate impact, by itself, does not state a prima facie case under § 504. Rather, actionable disparate impact requires analysis of whether the individual is otherwise qualified and whether reasonable accommodations may provide meaningful access" to state-funded services) (citing *Alexander v. Choate*, 469 U.S. 287 at 299-301 (1985)).

Plaintiff has not made any such showing. There is no evidence anywhere in the record indicating that the University's policies or practices with respect to rehiring persons who had been

terminated for cause fell any more harshly on disabled persons in general, or former substance abusers in particular, than on any other group. There is simply no basis for such a claim here.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #52) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      September 2, 2009.